# Exhibit B

1    SEYFARTH SHAW LLP
Diana Tabacopoulos (SBN 128238)
2    dtabacopoulos@seyfarth.com
2029 Century Park East, Suite 3500
3    Los Angeles, California 90067-3021
Telephone:    (310) 277-7200
4    Facsimile:     (310) 201-5219

5    SEYFARTH SHAW LLP
Michael W. Kopp (SBN 206385)
6    mkopp@seyfarth.com
400 Capitol Mall, Suite 2350
7    Sacramento, California 95814-4428
Telephone:    (916) 448-0159
8    Facsimile:     (916) 558-4839

9    Attorneys for Defendant
PAREXEL INTERNATIONAL CORPORATION
10

11                 UNITED STATES DISTRICT COURT

12                SOUTHERN DISTRICT OF CALIFORNIA

13

14    SCHOULEE CONES, an individual, on behalf of     Case No. 3:16-cv-03084-L-BGS
herself and all others similarly situated,
15                                      **DEFENDANT'S SUPPLEMENTAL**
                   Plaintiffs,            **RESPONSE TO PLAINTIFFS' FIRST SET**
16                                      **OF INTERROGATORIES**

17          v.

18    PAREXEL INTERNATIONAL CORPORATION,
a Massachusetts corporation licensed to do
19    business in the State of California,           Complaint Filed: 12/22/16
                                       SAC Filed:   9/11/17
20                  Defendant.

21

22        Notwithstanding notice given to Plaintiffs on multiple instances from the inception of this

23    litigation that PAREXEL International Corporation was not the employer of Plaintiffs, Plaintiffs have

24    propounded these requests to PAREXEL International Corporation, an entity which did not employ

25    Plaintiff Schoulee Cones, Plaintiff Dexter Pasis, nor any member of the putative class.  In a good faith

26    response intended to move discovery forward, co-defendant PAREXEL International LLC, by and

27    through its attorneys, has provided substantive responses to Plaintiff SCHOULEE CONES' ("Plaintiff")

28    First Set of Interrogatories, subject to the objections originally and presently asserted.  Although the

1  substantive responses are provided by PAREXEL International LLC, all objections are asserted and

2  applicable to PAREXEL International Corporation and PAREXEL International LLC.

3  These responses are made solely for the purposes of this action. Each response is subject to all

4  objections as to competence, relevance, materiality, propriety, and admissibility, and all other grounds

5  that would require the exclusion of any statements contained herein, if such statements were made by a

6  witness testifying in court, all of which are expressly reserved and may be interposed at the time of trial.

7  The fact that Defendant has answered part or all of any interrogatory is not intended and shall not be

8  construed to be a waiver of part or all of any objection to any interrogatory.  Defendant is not making

9  any incidental or implied admissions.

10  The information contained in each response is based only upon the information currently

11  available to Defendant. Defendant's investigation and discovery in preparation for trial will continue

12  throughout this action. Additional investigation may disclose further information relevant to these

13  responses, including information obtained by Defendant from Plaintiffs or third parties.  Defendant fully

14  reserves its right to alter, amend, supplement, or otherwise revise these responses if, for any reason, such

15  revisions or supplements become warranted.  Defendant responds to these interrogatories as it

16  understands them and reserves the right to provide different responses if Plaintiffs later provide a

17  different interpretation.

18  Defendant's responses to these Special Interrogatories are made without prejudice to its right to

19  introduce any and all evidence of any kind in this action.

20  **INTERROGATORY NO. 1:**

21  Set forth the name, ADDRESS, telephone number, email address, job title and position, employment

22  ADDRESS, and dates of employment of all persons employed as a Clinical Research Associate (CRA) in the

23  positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House

24  CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research Associate

25  II," and a "Senior Clinical Research Associate" within the United States by Parexel International, LLC

26  during the time period from December 22, 2013 through and including the date of YOUR response.

27

28

2

**RESPONSE TO NO. 1:**

Defendant objects that the interrogatory is premature as no class has been certified. Thus, the interrogatory seeking addresses, telephone numbers, email addresses, job titles and positions, employment addresses, and dates of employment of putative class members is overbroad and premature, as Plaintiffs currently represent only themselves. Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement. This is particularly the case where the work experiences, job assignments, and time spent on various duties between even the named Plaintiffs radically varies.

Defendant objects to Plaintiff's interrogatory on the grounds it seeks information that, if provided, would be a violation of that individual's right to privacy under Article I, Section I, of the California Constitution, Sections 1799.1, or under any other state or federal constitutional, statutory, or common law right of privacy.

Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical Research Associate." The above enumeration of positions does not correspond to PAREXEL International LLC's classifications of positions. Defendant is unable to generate the information requested absent clarification as to which specific positions Plaintiffs are intending to include within the putative class.

**SUPPLEMENTAL RESPONSE TO NO. 2:**

Defendant objects that the interrogatory is premature as no class has been certified. Thus, the interrogatory seeking addresses, telephone numbers, email addresses, job titles and positions, employment addresses, and dates of employment of putative class members is overbroad and premature, as Plaintiffs currently represent only themselves. Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985).

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    Production of class-wide information at this early stage of litigation would, accordingly, contravene

2    Rule 26's proportionality requirement.  This is particularly the case where the work experiences, job

3    assignments, and time spent on various duties between even the named Plaintiffs radically varies.

4        Defendant objects to Plaintiff's interrogatory on the grounds it seeks information that, if

5    provided, would be a violation of that individual's right to privacy under Article I, Section I, of the

6    California Constitution, Sections 1799.1, or under any other state or federal constitutional, statutory, or

7    common law right of privacy.

8        Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

9    "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

10   Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

11   Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

12   Research Associate." The above enumeration of positions does not correspond to PAREXEL International

13   LLC's classifications of positions.   Plaintiffs have subsequently amended this request to also include the

14   Senior Clinical Monitoring Associate position, and to clarify that the "Clinical Monitoring Associate"

15   position refers to Clinical Monitoring Associate I, but have failed to provide any foundational showing for

16   the contact information of thousands of employees nationwide.

17   **INTERROGATORY NO. 2:**

18       Set forth the total number of all persons employed as a Clinical Research Associate (CRA) in the

19   positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

20   House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

21   Research Associate II," and a "Senior Clinical Research Associate" within the United States by Parexel

22   International, LLC during the time period from December 22, 2013 through and including the date of

23   YOUR response.

24   **RESPONSE TO NO. 2:**

25       Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

26   interrogatory seeking "total number of all persons employed as a Clinical Research Associate (CRA) in

27   the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate

28   (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

4

1    Research Associate II," and a "Senior Clinical Research Associate" within the United States" is

2    overbroad and premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the

3    prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to

4    produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d

5    1416 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would,

6    accordingly, contravene Rule 26's proportionality requirement.  This is particularly the case where the

7    work experiences, job assignments, and time spent on various duties between even the named Plaintiffs

8    radically varies.

9          Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

10   "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

11   Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

12   Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

13   Research Associate."  The above enumeration of positions does not correspond to PAREXEL International

14   LLC's classifications of positions.  Defendant is unable to generate the information requested absent

15   clarification as to which specific positions Plaintiffs are intending to include within the putative class.

16   **SUPPLEMENTAL RESPONSE TO NO. 2:**

17          Defendant objects that the interrogatory is premature as no class has been certified.  Thus,

18   the interrogatory seeking "total number of all persons employed as a Clinical Research Associate (CRA)

19   in the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate

20   (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

21   Research Associate II," and a "Senior Clinical Research Associate" within the United States" is

22   overbroad and premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the

23   prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to

24   produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d

25   1416 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would,

26   accordingly, contravene Rule 26's proportionality requirement.  This is particularly the case where the

27   work experiences, job assignments, and time spent on various duties between even the named Plaintiffs

28   radically varies.

1    Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to "all

2    persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

3    Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

4    Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

5    Research Associate."  The above enumeration of positions does not correspond to PAREXEL International

6    LLC's classifications of positions.  Plaintiffs have subsequently amended this request to also include the

7    Senior Clinical Monitoring Associate position, and to clarify that the Clinical Monitoring Associate position

8    refers to Clinical Monitoring Associate I.  Without waiving the foregoing objections, and with Plaintiffs'

9    recent amendment and clarification of this request, Defendant responds as follows: Defendant estimates

10    approximately 1,925 current and former employees are within the stated class definition.

11    **INTERROGATORY NO. 3:**

12      Set forth the name, ADDRESS, telephone number, email address, job title and position,

13    employment ADDRESS, and dates of employment of all persons employed as a Clinical Research

14    Associate (CRA) in the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical

15    Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research

16    Associate I," a "Clinical Research Associate II," and a "Senior Clinical Research Associate" within the

17    State of California by Parexel International, LLC during the time period from December 22, 2012

18    through and including the date of YOUR response.

19    **RESPONSE TO NO. 3:**

20      Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

21    interrogatory seeking addresses, telephone numbers, email addresses, job titles and positions, employment

22    addresses, and dates of employment of putative class members is overbroad and premature, as Plaintiffs

23    currently represent only themselves.  Plaintiffs have not met the prima facie showing of Rule 23's

24    prerequisites or shown that such discovery measures are likely to produce persuasive information

25    substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985).

26    Production of class-wide information at this early stage of litigation would, accordingly, contravene

27    Rule 26's proportionality requirement.  This is particularly the case where the work experiences, job

28    assignments, and time spent on various duties between even the named Plaintiffs radically varies.

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    Defendant objects to Plaintiff's interrogatory on the grounds it seeks information that, if

2 provided, would be a violation of that individual's right to privacy under Article I, Section I, of the

3 California Constitution, Sections 1799.1, or under any other state or federal constitutional, statutory, or

4 common law right of privacy.

5 **SUPPLEMENTAL RESPONSE TO NO. 3:**

6    Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

7 "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

8 Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

9 Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

10 Research Associate." The above enumeration of positions does not correspond to PAREXEL International

11 LLC's classifications of positions.    Plaintiffs have subsequently amended this request to also include the

12 Senior Clinical Monitoring Associate position, and to clarify that the "Clinical Monitoring Associate"

13 position refers to Clinical Monitoring Associate I

14    Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

15 interrogatory seeking addresses, telephone numbers, email addresses, job titles and positions, employment

16 addresses, and dates of employment of putative class members is overbroad and premature, as Plaintiffs

17 currently represent only themselves.  Plaintiffs have not met the prima facie showing of Rule 23's

18 prerequisites or shown that such discovery measures are likely to produce persuasive information

19 substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985).

20 Production of class-wide information at this early stage of litigation would, accordingly, contravene

21 Rule 26's proportionality requirement.  This is particularly the case where the work experiences, job

22 assignments, and time spent on various duties between even the named Plaintiffs radically varies.

23    Defendant objects to Plaintiff's interrogatory on the grounds it seeks information that, if

24 provided, would be a violation of that individual's right to privacy under Article I, Section I, of the

25 California Constitution, Sections 1799.1, or under any other state or federal constitutional, statutory, or

26 common law right of privacy.

27    Plaintiffs have failed to provide any foundational showing for the contact information of PAREXEL

28 International LLC employees statewide.

1

2  **INTERROGATORY NO. 4:**

3      Set forth the total number of all persons employed as a Clinical Research Associate (CRA) in the

4  positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

5  House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

6  Research Associate II," and a "Senior Clinical Research Associate" within the State of California by

7  Parexel International, LLC during the time period from December 22, 2012 through and including the

8  date of YOUR response.

9  **RESPONSE TO NO. 4:**

10     Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

11  interrogatory regarding putative class data is overbroad and premature, as Plaintiffs currently represent

12  only themselves.  Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown

13  that such discovery measures are likely to produce persuasive information substantiating the class action

14  allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at

15  this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement.  This

16  is particularly the case where the work experiences, job assignments, and time spent on various duties

17  between even the named Plaintiffs radically varies.

18     Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

19  "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

20  Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

21  Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

22  Research Associate."  The above enumeration of positions does not correspond to PAREXEL International

23  LLC's classifications of positions.  Defendant is unable to generate the information requested absent

24  clarification as to which specific positions Plaintiffs are intending to include within the putative class.

25  **SUPPLEMENTAL RESPONSE TO NO. 4:**

26     Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

27  interrogatory regarding putative class data is overbroad and premature, as Plaintiffs currently represent

28  only themselves.  Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown

1   that such discovery measures are likely to produce persuasive information substantiating the class action

2   allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at

3   this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement.  This

4   is particularly the case where the work experiences, job assignments, and time spent on various duties

5   between even the named Plaintiffs radically varies.

6          Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

7   "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

8   Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

9   Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

10  Research Associate."  The above enumeration of positions does not correspond to PAREXEL International

11  LLC's classifications of positions.  Plaintiffs have subsequently amended this request to also include the

12  Senior Clinical Monitoring Associate position, and to clarify that the Clinical Monitoring Associate position

13  refers to Clinical Monitoring Associate I. Without waiving the foregoing objections, and with Plaintiffs'

14  recent amendment and clarification of this request, Defendant responds as follows: Defendant estimates

15  approximately 240 current and former employees to be within the stated class definition.

16  **INTERROGATORY NO. 5:**

17          Set forth the total number of all persons employed as a Clinical Research Associate (CRA) in the

18  positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

19  House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

20  Research Associate II," and a "Senior Clinical Research Associate" within the United States by Parexel

21  International Corporation during the time period from December 22, 2013 through and including the

22  date of YOUR response.

23  **RESPONSE TO NO. 5:**

24          Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

25  interrogatory regarding putative class data is overbroad and premature, as Plaintiffs currently represent

26  only themselves.  Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown

27  that such discovery measures are likely to produce persuasive information substantiating the class action

28  allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at

9

1  this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement. This

2  is particularly the case where the work experiences, job assignments, and time spent on various duties

3  between even the named Plaintiffs radically varies.

4  Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

5  "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

6  Associate (In-House CRA)," a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

7  Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

8  Research Associate." The above enumeration of positions does not correspond to PAREXEL International

9  LLC's classifications of positions. Defendant is unable to generate the information requested absent

10 clarification as to which specific positions Plaintiffs are intending to include within the putative class.

11 **SUPPLEMENTAL RESPONSE TO NO. 5:**

12 Defendant objects that the interrogatory is premature as no class has been certified. Thus, the

13 interrogatory regarding putative class data is overbroad and premature, as Plaintiffs currently represent

14 only themselves. Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown

15 that such discovery measures are likely to produce persuasive information substantiating the class action

16 allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at

17 this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement. This

18 is particularly the case where the work experiences, job assignments, and time spent on various duties

19 between even the named Plaintiffs radically varies.

20 Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

21 "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

22 Associate (In-House CRA)," a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

23 Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

24 Research Associate." The above enumeration of positions does not correspond to PAREXEL International

25 LLC's classifications of positions. Plaintiffs have subsequently amended this request to also include the

26 Senior Clinical Monitoring Associate position, and to clarify that the Clinical Monitoring Associate position

27 refers to Clinical Monitoring Associate I. Without waiving the foregoing objections, Defendant answers as

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    follows: None.  Defendant PAREXEL International Corporation did not employ Plaintiffs or any members

2    of the putative class.

3    **INTERROGATORY NO. 6:**

4         Set forth the total number of all persons employed as a Clinical Research Associate (CRA) in the

5    positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

6    House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

7    Research Associate II," and a "Senior Clinical Research Associate" within the State of California by

8    Parexel International Corporation during the time period from December 22, 2012 through and including

9    the date of YOUR response.

10   **RESPONSE TO NO. 6:**

11        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

12   interrogatory regarding putative class data is overbroad and premature, as Plaintiffs currently represent

13   only themselves.  Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown

14   that such discovery measures are likely to produce persuasive information substantiating the class action

15   allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at

16   this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement.  This

17   is particularly the case where the work experiences, job assignments, and time spent on various duties

18   between even the named Plaintiffs radically varies.

19        Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

20   "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

21   Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

22   Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

23   Research Associate."  The above enumeration of positions does not correspond to PAREXEL International

24   LLC's classifications of positions.  Defendant is unable to generate the information requested absent

25   clarification as to which specific positions Plaintiffs are intending to include within the putative class.

26   **SUPPLEMENTAL RESPONSE TO NO. 6:**

27        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

28   interrogatory regarding putative class data is overbroad and premature, as Plaintiffs currently represent

1   only themselves.  Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown

2   that such discovery measures are likely to produce persuasive information substantiating the class action

3   allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at

4   this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement.  This

5   is particularly the case where the work experiences, job assignments, and time spent on various duties

6   between even the named Plaintiffs radically varies.

7        Defendant objects to the requests as vague and ambiguous as phrased, in requesting data as to

8   "all persons employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring

9   Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research

10  Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical

11  Research Associate."  The above enumeration of positions does not correspond to PAREXEL International

12  LLC's classifications of positions. Plaintiffs have subsequently amended this request to also include the

13  Senior Clinical Monitoring Associate position, and to clarify that the Clinical Monitoring Associate position

14  refers to Clinical Monitoring Associate I.  Without waiving the foregoing objections, Defendant answers as

15  follows:  None.  Defendant PAREXEL International Corporation did not employ Plaintiffs or any members

16  of the putative class.

17  **INTERROGATORY NO. 7:**

18       Set forth all job duties, responsibilities, and qualification requirements for all persons employed

19  as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring Associate (In-House

20  CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a

21  "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical Research

22  Associate" within the United States by Parexel International, LLC during the time period from

23  December 22, 2013 through and including the date of YOUR response.

24  **RESPONSE TO NO. 7:**

25       Defendant objects to this request on the grounds that it is vague and ambiguous as to the

26  enumerated positions "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

27  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

28  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks information regarding:

(1) job duties and responsibilities for Clinical Monitoring Associate I,

(2) job duties and responsibilities for Clinical Monitoring Associate II,

(3) job duties and responsibilities for Clinical Research Associate I

(4) job duties and responsibilities for Clinical Research Associate II

(5) job duties and responsibilities for Senior Clinical Research Associate

(6) qualification requirements for Clinical Monitoring Associate I

(7) qualification requirements for Clinical Monitoring Associate II

(8) qualification requirements for Clinical Research Associate I

(9) qualification requirements for Clinical Research Associate II

(10) qualification requirements for Senior Clinical Research Associate

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with

1  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

2  where Defendant pled multiple affirmative defenses).  Defendant further objects to this Interrogatory on

3  the grounds that the answer would necessitate the preparation of a compilation or summary.

4          Subject to the above objections, Defendant responds as follows:

5          (1) The specific job duties and responsibilities of the CMA I position will vary according to a

6  number of factors including but not limited to the nature of the study (or studies) to which the CMA I is

7  assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the study,

8  the experience of the CMA I, complications, demands, or challenges unique to the study, and sponsor

9  requirements unique to the study.  A general description of the types of job duties and responsibilities

10  required of the CMA I position is provided in the job description concurrently produced in response to

11  Plaintiff's first set of requests for production.  Although this job description identifies various duties

12  performed by the CMA I position in various phases of the studies to which they are assigned, the actual

13  performance of those duties and responsibilities, and time spent on those duties will vary, including

14  based on the factors identified above.

15          (2) The CMA II position is typically assigned to studies of increased complexity as compared to

16  the CMA I position, and is assigned to more challenging therapeutic areas.  The specific job duties and

17  responsibilities of the CMA II position will vary according to a number of factors including but not

18  limited to the nature of the study (or studies) to which the CMA II is assigned, the stage of the study, the

19  number of additional CMA or CRA positions assigned to the study, the experience of the CMA,

20  complications, demands, or challenges unique to the study, and sponsor requirements unique to the

21  study.  A general description of the types of job duties and responsibilities required of the CMA II

22  position is provided in the job description concurrently produced in response to Plaintiff's first set of

23  requests for production.  Although this job description identifies various duties performed by the CMA

24  II position in various phases of the studies to which they are assigned, the actual performance of those

25  duties and responsibilities, and time spent on those duties will vary, including based on the factors

26  identified above.

27          (3) The specific job duties and responsibilities of the CRA I position will vary according to a

28  number of factors including but not limited to the location of the study to which the CRA I is assigned,

14

1   the frequency of on-site visits to the site location(s), the nature of the study (or studies) to which the

2   CRA I is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to

3   the study, the experience of the CRA I, complications, demands, or challenges unique to the study, and

4   sponsor requirements unique to the study.  A general description of the types of job duties and

5   responsibilities required of the CRA I position is provided in the job description concurrently produced

6   in response to Plaintiff's first set of requests for production.  Although this job description identifies

7   various duties performed by the CRA I position in various phases of the studies to which they are

8   assigned, the actual performance of those duties and responsibilities, and time spent on those duties will

9   vary, including based on the factors identified above.

10          (4) The CRA II position is typically assigned to studies of increased complexity as compared to

11   the CRA I position, and is assigned to more challenging therapeutic areas.  The specific job duties and

12   responsibilities of the CRA II position will vary according to a number of factors including but not

13   limited to the location of the study to which the CRA II is assigned, the frequency of on-site visits to the

14   site location(s), the nature of the study (or studies) to which the CRA II is assigned, the stage of the

15   study, the number of additional CMA or CRA positions assigned to the study, the experience of the

16   CRA II, complications, demands, or challenges unique to the study, and sponsor requirements unique to

17   the study.  A general description of the types of job duties and responsibilities required of the CRA II

18   position is provided in the job description concurrently produced in response to Plaintiff's first set of

19   requests for production.  Although this job description identifies various duties performed by the CRA II

20   position in various phases of the studies to which they are assigned, the actual performance of those

21   duties and responsibilities, and time spent on those duties will vary, including based on the factors

22   identified above.

23          (5)  The Senior CRA position is typically assigned to studies of increased complexity as

24   compared to the CRA II and CRA I positions, and is assigned to more challenging therapeutic areas.

25   The specific job duties and responsibilities of the Senior CRA position will vary according to a number

26   of factors including but not limited to the location of the study to which the Senior CRA is assigned, the

27   frequency of on-site visits to the site location(s), the nature of the study (or studies) to which the Senior

28   CRA is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the

1   study, the experience of the Senior CRA, complications, demands, or challenges unique to the study, and

2   sponsor requirements unique to the study.  A general description of the types of job duties and

3   responsibilities required of the Senior CRA position is provided in the job description concurrently

4   produced in response to Plaintiff's first set of requests for production.  Although this job description

5   identifies various duties performed by the Senior CRA position in various phases of the studies to which

6   they are assigned, the actual performance of those duties and responsibilities, and time spent on those

7   duties will vary, including based on the factors identified above.

8         (6) Defendant refers Plaintiff to the skills and qualification requirements identified for the CMA

9   I position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

10   set of requests for production.

11         (7) Defendant refers Plaintiff to the skills and qualification requirements identified for the CMA

12   II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

13   set of requests for production.

14         (8) Defendant refers Plaintiff to the skills and qualification requirements identified for the CRA I

15   position on the job descriptions and job postings produced concurrently in response to Plaintiff's first set

16   of requests for production.

17         (9) Defendant refers Plaintiff to the skills and qualification requirements identified for the CRA

18   II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

19   set of requests for production.

20         (10) Defendant refers Plaintiff to the skills and qualification requirements identified for the

21   Senior CRA position on the job descriptions and job postings produced concurrently in response to

22   Plaintiff's first set of requests for production.

23   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7**

24         Defendant objects to this request on the grounds that it is vague and ambiguous as to the

25   enumerated positions "Clinical Monitoring Associate (In-House CRA)," a "Clinical Monitoring

26   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

27   "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

28   subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I.  Defendant also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks information regarding:

(1) job duties and responsibilities for Clinical Monitoring Associate I,

(2) job duties and responsibilities for Clinical Monitoring Associate II,

(3) job duties and responsibilities for Senior Clinical Monitoring Associate,

(4) job duties and responsibilities for Clinical Research Associate I

(5) job duties and responsibilities for Clinical Research Associate II

(6) job duties and responsibilities for Senior Clinical Research Associate

(7) qualification requirements for Clinical Monitoring Associate I

(8) qualification requirements for Clinical Monitoring Associate II

(9) qualification requirements for Senior Clinical Monitoring Associate

(10) qualification requirements for Clinical Research Associate I

(11) qualification requirements for Clinical Research Associate II

(12) qualification requirements for Senior Clinical Research Associate

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

17

*TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits where Defendant pled multiple affirmative defenses).  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the preparation of a compilation or summary.

Subject to the above objections, Defendant responds as follows:

(1) The specific job duties and responsibilities of the CMA I position will vary individually among those holding the positions, according to a number of factors including but not limited to the nature of the study (or studies) to which the CMA I is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the study, the experience, inclination, and work ethic of the CMA I, complications, demands, or challenges unique to the study, and sponsor requirements unique to the study.  A general description of the types of job duties and responsibilities required of the CMA I position is provided in the job description concurrently produced in response to Plaintiff's first set of requests for production.  Although this job description identifies various duties performed by the CMA I position in various phases of the studies to which they are assigned, the actual performance of those duties and responsibilities, and time spent on those duties will vary, including based on the factors identified above.

(2) The CMA II position is typically assigned to studies of increased complexity as compared to the CMA I position, and is assigned to more challenging therapeutic areas.  The specific job duties and responsibilities of the CMA II position will vary individually among those holding the positions, according to a number of factors including but not limited to the nature of the study (or studies) to which the CMA II is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the study, the experience, inclination, and work ethic of the CMA II, complications, demands, or challenges unique to the study, and sponsor requirements unique to the study.  A general description of the types of job duties and responsibilities required of the CMA II position is provided in the job description concurrently produced in response to Plaintiff's first set of requests for production.  Although this job description identifies various duties performed by the CMA II position in various

1  phases of the studies to which they are assigned, the actual performance of those duties and

2  responsibilities, and time spent on those duties will vary, including based on the factors identified above.

3      (3)  The Senior CMA position is typically assigned to studies of increased complexity as

4  compared to the CMA I and CMA II positions, and is assigned to more challenging therapeutic areas.

5  The specific job duties and responsibilities of the Senior CMA position will vary individually among

6  those holding the positions, according to a number of factors including but not limited to the nature of

7  the study (or studies) to which the CMA II is assigned, the stage of the study, the number of additional

8  CMA or CRA positions assigned to the study, the experience, inclination, and work ethic of the Senior

9  CMA, complications, demands, or challenges unique to the study, and sponsor requirements unique to

10  the study.  A general description of the types of job duties and responsibilities required of the Senior

11  CMA position is provided in the job description concurrently produced in response to Plaintiff's first set

12  of requests for production.  Although this job description identifies various duties performed by the

13  Senior CMA position in various phases of the studies to which they are assigned, the actual performance

14  of those duties and responsibilities, and time spent on those duties will vary, including based on the

15  factors identified above.

16      (4)  The specific job duties and responsibilities of the CRA I position will vary individually

17  among those holding the positions, according to a number of factors including but not limited to the

18  location of the study to which the CRA I is assigned, the frequency of on-site visits to the site

19  location(s), the nature of the study (or studies) to which the CRA I is assigned, the stage of the study, the

20  number of additional CMA or CRA positions assigned to the study, the experience, inclination, and

21  work ethic of the CRA I, complications, demands, or challenges unique to the study, and sponsor

22  requirements unique to the study.  A general description of the types of job duties and responsibilities

23  required of the CRA I position is provided in the job description concurrently produced in response to

24  Plaintiff's first set of requests for production.  Although this job description identifies various duties

25  performed by the CRA I position in various phases of the studies to which they are assigned, the actual

26  performance of those duties and responsibilities, and time spent on those duties will vary, including

27  based on the factors identified above.

28      (5)  The CRA II position is typically assigned to studies of increased complexity as compared to

19

1  the CRA I position, and is assigned to more challenging therapeutic areas.  The specific job duties and

2  responsibilities of the CRA II position will vary individually among those holding the positions,

3  according to a number of factors including but not limited to the location of the study to which the CRA

4  II is assigned, the frequency of on-site visits to the site location(s), the nature of the study (or studies) to

5  which the CRA II is assigned, the stage of the study, the number of additional CMA or CRA positions

6  assigned to the study, the experience, inclination, and work ethic of the CRA II, complications,

7  demands, or challenges unique to the study, and sponsor requirements unique to the study.  A general

8  description of the types of job duties and responsibilities required of the CRA II position is provided in

9  the job description concurrently produced in response to Plaintiff's first set of requests for production.

10  Although this job description identifies various duties performed by the CRA II position in various

11  phases of the studies to which they are assigned, the actual performance of those duties and

12  responsibilities, and time spent on those duties will vary, including based on the factors identified above.

13      (6)  The Senior CRA position is typically assigned to studies of increased complexity as

14  compared to the CRA II and CRA I positions, and is assigned to more challenging therapeutic areas.

15  The specific job duties and responsibilities of the Senior CRA position will vary individually among

16  those holding the positions, according to a number of factors including but not limited to the location of

17  the study to which the Senior CRA is assigned, the frequency of on-site visits to the site location(s), the

18  nature of the study (or studies) to which the Senior CRA is assigned, the stage of the study, the number

19  of additional CMA or CRA positions assigned to the study, the experience, inclination and work ethic of

20  the Senior CRA, complications, demands, or challenges unique to the study, and sponsor requirements

21  unique to the study.  A general description of the types of job duties and responsibilities required of the

22  Senior CRA position is provided in the job description concurrently produced in response to Plaintiff's

23  first set of requests for production.  Although this job description identifies various duties performed by

24  the Senior CRA position in various phases of the studies to which they are assigned, the actual

25  performance of those duties and responsibilities, and time spent on those duties will vary, including

26  based on the factors identified above.

27      (7)  Defendant refers Plaintiff to the skills and qualification requirements identified for the CMA

28  I position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

20

1    set of requests for production.

2         (8) Defendant refers Plaintiff to the skills and qualification requirements identified for the CMA

3    II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

4    set of requests for production.

5         (9) Defendant refers Plaintiff to the skills and qualification requirements identified for the Senior

6    CMA position on the job descriptions and job postings produced concurrently in response to Plaintiff's

7    first set of requests for production.

8         (10) Defendant refers Plaintiff to the skills and qualification requirements identified for the CRA

9    I position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

10   set of requests for production.

11        (11) Defendant refers Plaintiff to the skills and qualification requirements identified for the CRA

12   II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

13   set of requests for production.

14        (12) Defendant refers Plaintiff to the skills and qualification requirements identified for the

15   Senior CRA position on the job descriptions and job postings produced concurrently in response to

16   Plaintiff's first set of requests for production.

17   **INTERROGATORY NO. 8:**

18        IDENTIFY each DOCUMENT REFERRING TO OR REFLECTING any  policy or procedure

19   used to determine whether to classify any person employed as a Clinical Research Associate (CRA) in

20   the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate

21   (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

22   Research Associate II," or a "Senior Clinical Research Associate" within the United States by Parexel

23   International, LLC during the time period from December 22, 2013 through and including the date of

24   YOUR response as exempt from payment of overtime compensation.   .

25   **RESPONSE TO NO. 8:**

26        Defendant objects to this request on the grounds that it is vague and ambiguous as to the

27   enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

28   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

21

1   Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

2   the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

3   numerous subparts. Specifically, the request (as Defendant interprets the request) seeks information and

4   documents regarding policies or procedures used to determine the exempt classification of what

5   Defendant understands to be *five* separate positions enumerated by Plaintiff.

6        A party may not evade the limit of 25 interrogatories by propounding interrogatories with

7   distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

8   (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

9   worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

10  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

11  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

12  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

13  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

14  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

15  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

16  (finding interrogatories asking for a "single piece of information" about *all products identified in*

17  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

18  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

19  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

20  Documents that You contend support each of your Affirmative Defenses, and all Persons with

21  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

22  where Defendant pled multiple affirmative defenses.  Defendant further objects to this Interrogatory on

23  the grounds that the answer would necessitate the preparation of a compilation or summary.

24       Defendant objects to this interrogatory on the grounds that it seeks information subject to the

25  attorney-client privilege and seeks attorney work product.

26  **INTERROGATORY NO. 9:**

27       Set forth all job duties, responsibilities, and qualification requirements for all persons employed

28  as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring Associate (In-House

22

1   CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a

2   "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical Research

3   Associate" within the State of California by Parexel International, LLC during the time period from

4   December 22, 2012 through and including the date of YOUR response.

5   **RESPONSE TO NO. 9:**

6       Defendant objects to this request on the grounds that it is vague and ambiguous as to the

7   enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

8   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

9   "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on

10  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

11  numerous subparts. Specifically, the request (as Defendant interprets the request) seeks information

12  regarding:

13      (1) job duties and responsibilities for Clinical Monitoring Associate I,

14      (2) job duties and responsibilities for Clinical Monitoring Associate II,

15      (3) job duties and responsibilities for Clinical Research Associate I

16      (4) job duties and responsibilities for Clinical Research Associate II

17      (5) job duties and responsibilities for Senior Clinical Research Associate

18      (6) qualification requirements for Clinical Monitoring Associate I

19      (7) qualification requirements for Clinical Monitoring Associate II

20      (8) qualification requirements for Clinical Research Associate I

21      (9) qualification requirements for Clinical Research Associate II

22      (10) qualification requirements for Senior Clinical Research Associate

23      A party may not evade the limit of 25 interrogatories by propounding interrogatories with

24  distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

25  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

26  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

27  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

28  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

1   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

2   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

3   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

4   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

5   (finding interrogatories asking for a "single piece of information" about *all products identified in*

6   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

7   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

8   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

9   Documents that You contend support each of your Affirmative Defenses, and all Persons with

10   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

11   where Defendant pled multiple affirmative defenses).  Defendant further objects to this Interrogatory on

12   the grounds that the answer would necessitate the preparation of a compilation or summary.

13        Subject to the above objections, Defendant responds as follows:

14        (1) The specific job duties and responsibilities of the CMA I position will vary according to a

15   number of factors including but not limited to the nature of the study (or studies) to which the CMA I is

16   assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the study,

17   the experience of the CMA I, complications, demands, or challenges unique to the study, and sponsor

18   requirements unique to the study.  A general description of the types of job duties and responsibilities

19   required of the CMA I position is provided in the job description concurrently produced in response to

20   Plaintiff's first set of requests for production.  Although this job description identifies various duties

21   performed by the CMA I position in various phases of the studies to which they are assigned, the actual

22   performance of those duties and responsibilities, and time spent on those duties will vary, including

23   based on the factors identified above.

24        (2) The CMA II position is typically assigned to studies of increased complexity as compared to

25   the CMA I position, and is assigned to more challenging therapeutic areas.  The specific job duties and

26   responsibilities of the CMA II position will vary according to a number of factors including but not

27   limited to the nature of the study (or studies) to which the CMA II is assigned, the stage of the study, the

28   number of additional CMA or CRA positions assigned to the study, the experience of the CMA II,

1   complications, demands, or challenges unique to the study, and sponsor requirements unique to the

2   study. A general description of the types of job duties and responsibilities required of the CMA II

3   position is provided in the job description concurrently produced in response to Plaintiff's first set of

4   requests for production. Although this job description identifies various duties performed by the CMA

5   II position in various phases of the studies to which they are assigned, the actual performance of those

6   duties and responsibilities, and time spent on those duties will vary, including based on the factors

7   identified above.

8          (3) The specific job duties and responsibilities of the CRA I position will vary according to a

9   number of factors including but not limited to the location of the study to which the CRA I is assigned,

10   the frequency of on-site visits to the site location(s), the nature of the study (or studies) to which the

11   CRA I is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to

12   the study, the experience of the CRA I, complications, demands, or challenges unique to the study, and

13   sponsor requirements unique to the study. A general description of the types of job duties and

14   responsibilities required of the CRA I position is provided in the job description concurrently produced

15   in response to Plaintiff's first set of requests for production. Although this job description identifies

16   various duties performed by the CRA I position in various phases of the studies to which they are

17   assigned, the actual performance of those duties and responsibilities, and time spent on those duties will

18   vary, including based on the factors identified above.

19          (4) The CRA II position is typically assigned to studies of increased complexity as compared to

20   the CRA I position, and is assigned to more challenging therapeutic areas. The specific job duties and

21   responsibilities of the CRA II position will vary according to a number of factors including but not

22   limited to the location of the study to which the CRA II is assigned, the frequency of on-site visits to the

23   site location(s), the nature of the study (or studies) to which the CRA II is assigned, the stage of the

24   study, the number of additional CMA or CRA positions assigned to the study, the experience of the

25   CRA II, complications, demands, or challenges unique to the study, and sponsor requirements unique to

26   the study. A general description of the types of job duties and responsibilities required of the CRA II

27   position is provided in the job description concurrently produced in response to Plaintiff's first set of

28   requests for production. Although this job description identifies various duties performed by the CRA II

1  position in various phases of the studies to which they are assigned, the actual performance of those

2  duties and responsibilities, and time spent on those duties will vary, including based on the factors

3  identified above.

4    (5)  The Senior CRA position is typically assigned to studies of increased complexity as

5  compared to the CRA II and CRA I positions, and is assigned to more challenging therapeutic areas.

6  The specific job duties and responsibilities of the Senior CRA position will vary according to a number

7  of factors including but not limited to the location of the study to which the Senior CRA is assigned, the

8  frequency of on-site visits to the site location(s), the nature of the study (or studies) to which the Senior

9  CRA is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the

10  study, the experience of the Senior CRA, complications, demands, or challenges unique to the study, and

11  sponsor requirements unique to the study.  A general description of the types of job duties and

12  responsibilities required of the Senior CRA position is provided in the job description concurrently

13  produced in response to Plaintiff's first set of requests for production.  Although this job description

14  identifies various duties performed by the Senior CRA position in various phases of the studies to which

15  they are assigned, the actual performance of those duties and responsibilities, and time spent on those

16  duties will vary, including based on the factors identified above.

17    (6) Defendant refers Plaintiffs to the skills and qualification requirements identified for the CMA

18  I position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

19  set of requests for production.

20    (7) Defendant refers Plaintiffs to the skills and qualification requirements identified for the CMA

21  II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

22  set of requests for production.

23    (8) Defendant refers Plaintiffs to the skills and qualification requirements identified for the CRA

24  I position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

25  set of requests for production.

26    (9) Defendant refers Plaintiffs to the skills and qualification requirements identified for the CRA

27  II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

28  set of requests for production.

26

1    (10) Defendant refers Plaintiffs to the skills and qualification requirements identified for the

2    Senior CRA position on the job descriptions and job postings produced concurrently in response to

3    Plaintiff's first set of requests for production.

4    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9**

5    Subject to the above objections, Defendant responds as follows:

6    (1) The specific job duties and responsibilities of the CMA I position will vary individually

7    among those holding the positions, according to a number of factors including but not limited to the

8    nature of the study (or studies) to which the CMA I is assigned, the stage of the study, the number of

9    additional CMA or CRA positions assigned to the study, the experience, inclination, and work ethic of

10   the CMA I, complications, demands, or challenges unique to the study, and sponsor requirements unique

11   to the study.  A general description of the types of job duties and responsibilities required of the CMA I

12   position is provided in the job description concurrently produced in response to Plaintiff's first set of

13   requests for production.  Although this job description identifies various duties performed by the CMA I

14   position in various phases of the studies to which they are assigned, the actual performance of those

15   duties and responsibilities, and time spent on those duties will vary, including based on the factors

16   identified above.

17   (2) The CMA II position is typically assigned to studies of increased complexity as compared to

18   the CMA I position, and is assigned to more challenging therapeutic areas.  The specific job duties and

19   responsibilities of the CMA II position will vary individually among those holding the positions,

20   according to a number of factors including but not limited to the nature of the study (or studies) to which

21   the CMA II is assigned, the stage of the study, the number of additional CMA or CRA positions

22   assigned to the study, the experience, inclination, and work ethic of the CMA II, complications,

23   demands, or challenges unique to the study, and sponsor requirements unique to the study.  A general

24   description of the types of job duties and responsibilities required of the CMA II position is provided in

25   the job description concurrently produced in response to Plaintiff's first set of requests for production.

26   Although this job description identifies various duties performed by the CMA II position in various

27   phases of the studies to which they are assigned, the actual performance of those duties and

28   responsibilities, and time spent on those duties will vary, including based on the factors identified above.

(3)   The Senior CMA position is typically assigned to studies of increased complexity as compared to the CMA I and CMA II positions, and is assigned to more challenging therapeutic areas. The specific job duties and responsibilities of the Senior CMA position will vary individually among those holding the positions, according to a number of factors including but not limited to the nature of the study (or studies) to which the CMA II is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the study, the experience, inclination, and work ethic of the Senior CMA, complications, demands, or challenges unique to the study, and sponsor requirements unique to the study.  A general description of the types of job duties and responsibilities required of the Senior CMA position is provided in the job description concurrently produced in response to Plaintiff's first set of requests for production.  Although this job description identifies various duties performed by the Senior CMA position in various phases of the studies to which they are assigned, the actual performance of those duties and responsibilities, and time spent on those duties will vary, including based on the factors identified above.

(4) The specific job duties and responsibilities of the CRA I position will vary individually among those holding the positions, according to a number of factors including but not limited to the location of the study to which the CRA I is assigned, the frequency of on-site visits to the site location(s), the nature of the study (or studies) to which the CRA I is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the study, the experience, inclination, and work ethic of the CRA I, complications, demands, or challenges unique to the study, and sponsor requirements unique to the study.  A general description of the types of job duties and responsibilities required of the CRA I position is provided in the job description concurrently produced in response to Plaintiff's first set of requests for production.  Although this job description identifies various duties performed by the CRA I position in various phases of the studies to which they are assigned, the actual performance of those duties and responsibilities, and time spent on those duties will vary, including based on the factors identified above.

(5) The CRA II position is typically assigned to studies of increased complexity as compared to the CRA I position, and is assigned to more challenging therapeutic areas.  The specific job duties and responsibilities of the CRA II position will vary individually among those holding the positions,

28

1  according to a number of factors including but not limited to the location of the study to which the CRA

2  II is assigned, the frequency of on-site visits to the site location(s), the nature of the study (or studies) to

3  which the CRA II is assigned, the stage of the study, the number of additional CMA or CRA positions

4  assigned to the study, the experience, inclination, and work ethic of the CRA II, complications,

5  demands, or challenges unique to the study, and sponsor requirements unique to the study.  A general

6  description of the types of job duties and responsibilities required of the CRA II position is provided in

7  the job description concurrently produced in response to Plaintiff's first set of requests for production.

8  Although this job description identifies various duties performed by the CRA II position in various

9  phases of the studies to which they are assigned, the actual performance of those duties and

10  responsibilities, and time spent on those duties will vary, including based on the factors identified above.

11     (6)  The Senior CRA position is typically assigned to studies of increased complexity as

12  compared to the CRA II and CRA I positions, and is assigned to more challenging therapeutic areas.

13  The specific job duties and responsibilities of the Senior CRA position will vary individually among

14  those holding the positions, according to a number of factors including but not limited to the location of

15  the study to which the Senior CRA is assigned, the frequency of on-site visits to the site location(s), the

16  nature of the study (or studies) to which the Senior CRA is assigned, the stage of the study, the number

17  of additional CMA or CRA positions assigned to the study, the experience, inclination and work ethic of

18  the Senior CRA, complications, demands, or challenges unique to the study, and sponsor requirements

19  unique to the study.  A general description of the types of job duties and responsibilities required of the

20  Senior CRA position is provided in the job description concurrently produced in response to Plaintiff's

21  first set of requests for production.  Although this job description identifies various duties performed by

22  the Senior CRA position in various phases of the studies to which they are assigned, the actual

23  performance of those duties and responsibilities, and time spent on those duties will vary, including

24  based on the factors identified above.

25     (7) Defendant refers Plaintiff to the skills and qualification requirements identified for the CMA

26  I position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

27  set of requests for production.

28     (8) Defendant refers Plaintiff to the skills and qualification requirements identified for the CMA

29

1    II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

2    set of requests for production.

3           (9) Defendant refers Plaintiff to the skills and qualification requirements identified for the Senior

4    CMA position on the job descriptions and job postings produced concurrently in response to Plaintiff's

5    first set of requests for production.

6           (10) Defendant refers Plaintiff to the skills and qualification requirements identified for the CRA

7    I position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

8    set of requests for production.

9           (11) Defendant refers Plaintiff to the skills and qualification requirements identified for the CRA

10    II position on the job descriptions and job postings produced concurrently in response to Plaintiff's first

11    set of requests for production.

12           (12) Defendant refers Plaintiff to the skills and qualification requirements identified for the

13    Senior CRA position on the job descriptions and job postings produced concurrently in response to

14    Plaintiff's first set of requests for production.

15

16    **INTERROGATORY NO. 10:**

17           IDENTIFY each DOCUMENT REFERRING TO OR REFLECTING any policy or procedure

18    used to determine whether to classify any person employed as a Clinical Research Associate (CRA) in

19    the positions of a "Clinical Monitoring Associate (In-House CRA)," a "Clinical Monitoring Associate

20    (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

21    Research Associate II," or a "Senior Clinical Research Associate" within the State of California by

22    Parexel International, LLC during the time period from December 22, 2012 through and including the

23    date of YOUR response as exempt from payment of overtime compensation .

24    **RESPONSE TO NO. 10:**

25           Defendant objects to this request on the grounds that it is vague and ambiguous as to the

26    enumerated positions ""Clinical Monitoring Associate (In-House CRA)," a "Clinical Monitoring

27    Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

28    "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

30

the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks information and documents regarding policies or procedures used to determine the exempt classification of what Defendant understands to be *five* separate positions enumerated by Plaintiff.

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits where Defendant pled multiple affirmative defenses). Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the preparation of a compilation or summary.

Defendant objects to this interrogatory on the grounds that it seeks information subject to the attorney-client privilege and seeks attorney work product.

**INTERROGATORY NO. 11:**

Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

31

1  Research Associate II," or a "Senior Clinical Research Associate" within the United States by Parexel

2  International, LLC during the time period from December 22, 2013 through and including the date of

3  YOUR response were at any time exempt from payment of overtime compensation? If your answer is

4  "yes," (a) set forth the name, ADDRESS, telephone number, email address, job title and position,

5  employment ADDRESS, and dates of employment of each such person identified; (b) for each such

6  person identified, set forth their name and all dates on each were exempt from payment of overtime

7  compensation; (c) for each such person identified, set forth their name and identify any exemption which

8  YOU base YOUR response; (d) set forth all facts upon which YOU base YOUR response; (e) set forth

9  the name, ADDRESS, telephone number, email address, job title, employer, and employment

10  ADDRESS of each PERSON who has knowledge of those facts; (f) IDENTIFY each DOCUMENT that

11  supports YOUR response; and (g) set forth the name, ADDRESS, telephone number, email address, job

12  title, employer, and employment ADDRESS of each CUSTODIAN who has possession of each

13  DOCUMENT that supports YOUR response.

14  **RESPONSE TO NO. 11:**

15      Defendant objects to this request on the grounds that it is vague and ambiguous as to the

16  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

17  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

18  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

19  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

20  numerous subparts. Specifically, the request (as Defendant interprets the request) seeks seven categories

21  of contentions, information and documents (subparts (a)-(g)) regarding *five* separate positions

22  enumerated by Plaintiff.

23      A party may not evade the limit of 25 interrogatories by propounding interrogatories with

24  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

25  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

26  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

27  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

28  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

32

1  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

2  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

3  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

4  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

5  (finding interrogatories asking for a "single piece of information" about *all products identified in*

6  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

7  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

8  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

9  Documents that You contend support each of your Affirmative Defenses, and all Persons with

10  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

11  where Defendant pled multiple affirmative defenses).

12       Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

13  interrogatory seeking contentions as to each and every putative class members is overbroad and

14  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

15  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

16  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

17  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

18  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

19  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

20  radically varies.

21       Defendant further objects to this contention interrogatory on the ground that it is premature, as

22  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

23  investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

24  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

25  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

26  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

27  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

28  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

33

1  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

2  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

3  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

4  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

5  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

6  interrogatories where substantial discovery had not been completed.)

7  　　　　Defendant further objects to the interrogatory to the extent it seeks information protected from

8  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

9  Defendant further objects to this interrogatory to the extent it seeks information protected by the

10  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

11  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

12  preparation of a compilation or summary.

13  **SUPPLEMENTAL RESPONSE TO NO. 11**

14  　　　　Defendant objects to this request on the grounds that it is vague and ambiguous as to the

15  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

16  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

17  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

18  subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

19  clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I.  Defendant

20  also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

21  impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request and as

22  Plaintiffs have subsequently clarified the request) seeks *seven* categories of contentions, information and

23  documents (subparts (a)-(g)) regarding *six* separate positions enumerated by Plaintiff.

24  　　　　A party may not evade the limit of 25 interrogatories by propounding interrogatories with

25  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

26  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

27  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

28  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

1   Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

2   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

3   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

4   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

5   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

6   (finding interrogatories asking for a "single piece of information" about *all products identified in*

7   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

8   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

9   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

10   Documents that You contend support each of your Affirmative Defenses, and all Persons with

11   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

12   where Defendant pled multiple affirmative defenses).

13        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

14   interrogatory seeking contentions as to each and every putative class members is overbroad and

15   premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

16   showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

17   persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

18   (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

19   contravene Rule 26's proportionality requirement.  This is particularly the case where the work

20   experiences, job assignments, and time spent on various duties between even the named Plaintiffs

21   radically varies.

22        Defendant further objects to this contention interrogatory on the ground that it is premature, as

23   discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

24   investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

25   2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

26   receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

27   contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

28   *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

1   ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

2   discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

3   *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

4   *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

5   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

6   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

7   interrogatories where substantial discovery had not been completed.)

8   Defendant further objects to the interrogatory to the extent it seeks information protected from

9   disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

10   Defendant further objects to this interrogatory to the extent it seeks information protected by the

11   attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

12   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

13   preparation of a compilation or summary.

14   Subject to the foregoing objections, Defendant answers as follow: Yes.

15   (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

16   positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class periods.

17   (b) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

18   positions, including Plaintiffs Shoulee Cones and Dexter Pasis.

19   (c) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

20   positions were classified exempt from the payment of overtime compensation under the Administrative

21   exemption, the Highly Compensated Employee Exemption, and/or the Learned Professional Exemption.

22   (d) Employees in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA positions

23   are tasked with performing integral, highly complicated research and monitoring functions for

24   Defendant's core business function of providing clinical research services for pharmaceutical testing of

25   medical products and medical devices.

26   Clinical Research Associates spend the majority of their time performing a scope of various

27   exempt duties requiring judgment and discretion, including but not limited to the monitoring and

28   evaluation of data integrity, detection of fraudulent reporting, escalation and suggested resolution of site

1   non-compliance, advice on patient recruiting plans, identification of trends of non-compliance,

2   recognition of areas of needed retraining, maintaining and promoting relations with the site staff,

3   evaluation of issues impacting patient safety, independently resolving site issues, questions and

4   concerns, including as to documentation, communication, and direction of the site, among other duties.

5   For each such duty, independent judgment and discretion is required and regularly exercised. The result

6   of the exercise of discretion and independent judgment is that Clinical Research Associates are able to

7   either or both make recommendations for action or take immediate action themselves. In doing so,

8   Clinical Research Associates have the authority to interpret and apply policies and procedures without

9   prior approval and take actions that bind Defendant on matters of significance within the study context.

10  Further, there is no active supervision of these positions, which are performed remotely. As such,

11  Clinical Research Associates must investigate, resolve, and plan matters of significance on behalf of

12  management when they are out in the field. Finally, the work that Clinical Research Associates perform

13  requires advanced knowledge in the field of medicine, pharmacology and life sciences.  These

14  employees receive extensive academic training given the technical and complex nature of their work.

15  The performance of these duties will vary from position to position and among the various CRA levels

16  and will vary individually among those holding the positions, depending upon a number of factors

17  including but not limited to the location of the study to which the CRA is assigned, the frequency of on-

18  site visits to the site location(s), the nature of the study (or studies) to which the CRA is assigned, the

19  stage of the study, the number of additional CMA or CRA positions assigned to the study, the

20  experience, inclination and work ethic of the CRA, complications, demands, or challenges unique to the

21  study, and sponsor requirements unite to the study.  In addition, Clinical Research Associates are

22  assigned studies of increasing complexity and more challenging therapeutic areas, commensurate with

23  the CRA's level (e.g. CRA I, CRA II, Senior CRA).  The failure to perform the reasonably expected

24  duties of the position, as in Schoulee Cones' case, does not permit an employee to avoid the exemption.

25          Clinical Monitoring Associates, including Plaintiff Dexter Pasis, spend the majority of their time

26  performing a scope of various exempt duties remotely, including but not limited to managing study sites,

27  planning and strategically managing the path toward site qualification, mentoring and training new

28  CMAs, using judgment to assess and ensure overall integrity of study implementation, ascertaining and

37

recommending appropriate follow-up responses to issues at clinical sites, establishing relationships with staff at study sites, maintaining a positive work environment, building partnerships, communicating with team members, managing sites and protocols independently, supporting less experienced staff on assignment, detection of fraudulent reporting, escalation and suggested resolution of site non-compliance, advice on patient recruiting plans, identification of trends of non-compliance, recognition of areas of needed retraining, and other functions that require judgment and discretion at every step. In doing so, Clinical Monitoring Associates have the authority to interpret and apply policies and procedures without prior approval and take actions that bind Defendant on matters of significance within the study context.  As such, Clinical Monitoring Associates must investigate and resolve matters of significance on behalf of management.

Finally, the work that Clinical Monitoring Associates perform requires advanced knowledge in the field of medicine, pharmacology and life sciences.  These employees receive extensive academic training given the technical and complex nature of their work.  The performance of these duties will vary from position to position and among the various CMA levels and individually among those holding the positions, depending upon a number of factors including but not limited to the location of the study to which the CMA is assigned, the nature of the study (or studies) to which the CMA is assigned, the stage of the study, the number of additional CMA or CRA positions assigned to the study, the experience, inclination and work ethic of the CMA, complications, demands, or challenges unique to the study, and sponsor requirements unite to the study.  In addition, Clinical Monitoring Associates are assigned studies of increasing complexity and more challenging therapeutic areas, commensurate with the CMA's level (e.g. CMA I, CMA II, Senior CMA).

Further, many CRA and CMA employees are exempt because they satisfy the FLSA highly compensated employee exemption, in that they perform the duties identified above, and receive an annualized base salary in excess of $100,000 per year.

(e) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar, Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations; Meaghan Marnell, Clinical Trial Operations Associate Director.

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v 2

(f) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

(g) Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

**INTERROGATORY NO. 12:**

Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," or a "Senior Clinical Research Associate" within the State of California by Parexel International, LLC during the time period from December 22, 2012 through and including the date of YOUR response were at any time exempt from payment of overtime compensation? If your answer is "yes," (a) set forth the name, ADDRESS, telephone number, email address, job title and position, employment ADDRESS, and dates of employment of each such person identified; (b) for each such person identified, set forth their name and all dates on each were exempt from payment of overtime compensation; (c) for each such person identified, set forth their name and identify any exemption which YOU base YOUR response; (d) set forth all facts upon which YOU base YOUR response; (e) set forth the name, ADDRESS, telephone number, email address, job title, employer, and employment ADDRESS of each PERSON who has knowledge of those facts; (f) IDENTIFY each DOCUMENT that supports YOUR response; and (g) set forth the name, ADDRESS, telephone number, email address, job title, employer, and employment ADDRESS of each CUSTODIAN who has possession of each DOCUMENT that supports YOUR response.

**RESPONSE TO NO. 12:**

Defendant objects to this request on the grounds that it is vague and ambiguous as to the enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

39

numerous subparts. Specifically, the request (as Defendant interprets the request) seeks seven categories of contentions, information and documents (subparts (a)-(g)) regarding *five* separate positions enumerated by Plaintiffs.

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits where Defendant pled multiple affirmative defenses).

Defendant objects that the interrogatory is premature as no class has been certified. Thus, the interrogatory seeking contentions as to each and every putative class members is overbroad and premature, as Plaintiffs currently represent only themselves. Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement. This is particularly the case where the work

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

2  radically varies.

3  　　Defendant further objects to this contention interrogatory on the ground that it is premature, as

4  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

5  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

6  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

7  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

8  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

9  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

10 ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

11 discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

12 *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

13 *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

14 plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

15 litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

16 interrogatories where substantial discovery had not been completed.)

17 　　Defendant further objects to the interrogatory to the extent it seeks information protected from

18 disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

19 Defendant further objects to this interrogatory to the extent it seeks information protected by the

20 attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

21 Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

22 preparation of a compilation or summary.

23 **SUPPLEMENTAL RESPONSE TO NO. 12**

24 　　Defendant objects to this request on the grounds that it is vague and ambiguous as to the

25 enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

26 Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

27 "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

28 subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I. Defendant also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request and as Plaintiffs have subsequently clarified the request) seeks *seven* categories of contentions, information and documents (subparts (a)-(g)) regarding *six* separate positions enumerated by Plaintiff.

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits where Defendant pled multiple affirmative defenses).

Defendant objects that the interrogatory is premature as no class has been certified. Thus, the interrogatory seeking contentions as to each and every putative class members is overbroad and premature, as Plaintiffs currently represent only themselves. Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

42

1   contravene Rule 26's proportionality requirement. This is particularly the case where the work

2   experiences, job assignments, and time spent on various duties between even the named Plaintiffs

3   radically varies.

4        Defendant further objects to this contention interrogatory on the ground that it is premature, as

5   discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

6   investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

7   2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

8   receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

9   contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

10  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

11  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

12  discovery is undertaken. In fact, courts tend to deny contention interrogatories *filed before substantial*

13  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

14  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

15  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

16  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

17  interrogatories where substantial discovery had not been completed.)

18       Defendant further objects to the interrogatory to the extent it seeks information protected from

19  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

20  Defendant further objects to this interrogatory to the extent it seeks information protected by the

21  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

22  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

23  preparation of a compilation or summary.

24       Subject to the foregoing objections, Defendant answers as follow: Yes.

25       (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

26  positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class periods.

27       (b) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

28  positions, including Plaintiffs Shoulee Cones and Dexter Pasis.

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

(c) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA positions were classified exempt from the payment of overtime compensation under the Administrative exemption, the Highly Compensated Employee Exemption, and/or the Learned Professional Exemption.

(d) Employees in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA positions are tasked with performing integral, highly complicated research and monitoring functions for Defendant's core business function of providing clinical research services for pharmaceutical testing of medical products and medical devices.

Clinical Research Associates spend the majority of their time performing a scope of various exempt duties requiring judgment and discretion, including but not limited to the monitoring and evaluation of data integrity, detection of fraudulent reporting, escalation and suggested resolution of site non-compliance, advice on patient recruiting plans, identification of trends of non-compliance, recognition of areas of needed retraining, maintaining and promoting relations with the site staff, evaluation of issues impacting patient safety, independently resolving site issues, questions and concerns, including as to documentation, communication, and direction of the site, among other duties. For each such duty, independent judgment and discretion is required and regularly exercised. The result of the exercise of discretion and independent judgment is that Clinical Research Associates are able to either or both make recommendations for action or take immediate action themselves. In doing so, Clinical Research Associates have the authority to interpret and apply policies and procedures without prior approval and take actions that bind Defendant on matters of significance within the study context. Further, there is no active supervision of these positions, which are performed remotely. As such, Clinical Research Associates must investigate, resolve, and plan matters of significance on behalf of management when they are out in the field. Finally, the work that Clinical Research Associates perform requires advanced knowledge in the field of medicine, pharmacology and life sciences. These employees receive extensive academic training given the technical and complex nature of their work. The performance of these duties will vary from position to position and among the various CRA levels and will vary individually among those holding the positions, depending upon a number of factors including but not limited to the location of the study to which the CRA is assigned, the frequency of on-site visits to the site location(s), the nature of the study (or studies) to which the CRA is assigned, the

44

1  stage of the study, the number of additional CMA or CRA positions assigned to the study, the

2  experience, inclination and work ethic of the CRA, complications, demands, or challenges unique to the

3  study, and sponsor requirements unite to the study.  In addition, Clinical Research Associates are

4  assigned studies of increasing complexity and more challenging therapeutic areas, commensurate with

5  the CRA's level (e.g. CRA I, CRA II, Senior CRA).  The failure to perform the reasonably expected

6  duties of the position, as in Schoulee Cones' case, does not permit an employee to avoid the exemption.

7         Clinical Monitoring Associates, including Plaintiff Dexter Pasis, spend the majority of their time

8  performing a scope of various exempt duties remotely, including but not limited to managing study sites,

9  planning and strategically managing the path toward site qualification, mentoring and training new

10 CMAs, using judgment to assess and ensure overall integrity of study implementation, ascertaining and

11 recommending appropriate follow-up responses to issues at clinical sites, establishing relationships with

12 staff at study sites, maintaining a positive work environment, building partnerships, communicating with

13 team members, managing sites and protocols independently, supporting less experienced staff on

14 assignment, detection of fraudulent reporting, escalation and suggested resolution of site non-

15 compliance, advice on patient recruiting plans, identification of trends of non-compliance, recognition of

16 areas of needed retraining, and other functions that require judgment and discretion at every step. In

17 doing so, Clinical Monitoring Associates have the authority to interpret and apply policies and

18 procedures without prior approval and take actions that bind Defendant on matters of significance within

19 the study context.  As such, Clinical Monitoring Associates must investigate and resolve matters of

20 significance on behalf of management.

21        Finally, the work that Clinical Monitoring Associates perform requires advanced knowledge in

22 the field of medicine, pharmacology and life sciences.  These employees receive extensive academic

23 training given the technical and complex nature of their work.  The performance of these duties will vary

24 from position to position and among the various CMA levels and individually among those holding the

25 positions, depending upon a number of factors including but not limited to the location of the study to

26 which the CMA is assigned, the nature of the study (or studies) to which the CMA is assigned, the stage

27 of the study, the number of additional CMA or CRA positions assigned to the study, the experience,

28 inclination and work ethic of the CMA, complications, demands, or challenges unique to the study, and

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES

42131569v.2

1  sponsor requirements unite to the study.  In addition, Clinical Monitoring Associates are assigned

2  studies of increasing complexity and more challenging therapeutic areas, commensurate with the CMA's

3  level (e.g. CMA I, CMA II, Senior CMA).

4       (e) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar,

5  Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations;

6  Meaghan Marnell, Clinical Trial Operations Associate Director.

7       (f) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis

8  and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and

9  documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

10       (g) Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for

11  Production of Documents.

12  **INTERROGATORY NO. 13:**

13       Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

14  positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

15  House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

16  Research Associate II," or a "Senior Clinical Research Associate" within the United States by Parexel

17  International, LLC during the time period from December 22, 2013 through and including the date of

18  YOUR response received total annual compensation of at least the annualized earnings amount of the

19  90th percentile of full-time non-hourly workers nationally as defined by 29 C.F.R. §541.601 that

20  included a weekly amount equal to the required salary amount required by 29 C.F.R. §541.600(a) paid

21  on a salary or fee basis as set forth in 29 C.F.R. §§541.602 and 541.605, excluding payments defined by

22  29 C.F.R. §541.602(a)(3), at any time during their employment? If your answer is "yes," (a) set forth the

23  name, ADDRESS, telephone number, email address, job title and position, employment ADDRESS, and

24  dates of employment of each such person identified; (b) for each such person identified, set forth their

25  name and all dates on each were exempt from payment of overtime compensation; (c) for each such

26  person identified, set forth their name and identify any exemption which YOU base YOUR response;

27  (d) set forth all facts upon which YOU base YOUR response; (e) set forth the name, ADDRESS,

28  telephone number, email address, job title, employer, and employment ADDRESS of each PERSON

46

1   who has knowledge of those facts; (f) IDENTIFY each DOCUMENT that supports YOUR response;

2   and (g) set forth the name, ADDRESS, telephone number, email address, job title, employer, and

3   employment ADDRESS of each CUSTODIAN who has possession of each DOCUMENT that supports

4   YOUR response.

5   **RESPONSE TO NO. 13:**

6        Defendant objects to this request on the grounds that it is vague and ambiguous as to the

7   enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

8   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

9   "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on

10  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

11  numerous subparts. Specifically, the request (as Defendant interprets the request) seeks seven categories

12  of contentions, information and documents (subparts (a)-(g)) regarding *five* separate positions

13  enumerated by Plaintiff.

14        A party may not evade the limit of 25 interrogatories by propounding interrogatories with

15  distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

16  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

17  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

18  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

19  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

20  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

21  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

22  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

23  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

24  (finding interrogatories asking for a "single piece of information" about *all products identified in*

25  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

26  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

27  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

28  Documents that You contend support each of your Affirmative Defenses, and all Persons with

1  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

2  where Defendant pled multiple affirmative defenses).

3      Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

4  interrogatory seeking contentions as to each and every putative class members is overbroad and

5  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

6  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

7  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

8  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

9  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

10  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

11  radically varies.

12      Defendant further objects to this contention interrogatory on the ground that it is premature, as

13  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

14  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

15  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

16  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

17  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

18  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

19  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

20  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

21  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

22  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

23  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

24  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

25  interrogatories where substantial discovery had not been completed.)

26      Defendant further objects to the interrogatory to the extent it seeks information protected from

27  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

28  Defendant further objects to this interrogatory to the extent it seeks information protected by the

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

2  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

3  preparation of a compilation or summary.

4  **SUPPLEMENTAL RESPONSE TO NO. 13**

5      Defendant objects to this request on the grounds that it is vague and ambiguous as to the

6  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

7  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

8  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

9  subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

10  clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I.  Defendant

11  also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

12  impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

13  seven categories of contentions, information and documents (subparts (a)-(g)) regarding *six* separate

14  positions enumerated by Plaintiff.

15      A party may not evade the limit of 25 interrogatories by propounding interrogatories with

16  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

17  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

18  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

19  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

20  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

21  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

22  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

23  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

24  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

25  (finding interrogatories asking for a "single piece of information" about *all products identified in*

26  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

27  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

28  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  Documents that You contend support each of your Affirmative Defenses, and all Persons with

2  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

3  where Defendant pled multiple affirmative defenses).

4        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

5  interrogatory seeking contentions as to each and every putative class members is overbroad and

6  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

7  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

8  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

9  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

10  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

11  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

12  radically varies.

13        Defendant further objects to this contention interrogatory on the ground that it is premature, as

14  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

15  investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

16  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

17  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

18  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

19  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

20  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

21  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

22  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

23  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

24  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

25  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

26  interrogatories where substantial discovery had not been completed.)

27        Defendant further objects to the interrogatory to the extent it seeks information protected from

28  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

1  Defendant further objects to this interrogatory to the extent it seeks information protected by the

2  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

3  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

4  preparation of a compilation or summary.

5      Subject to the foregoing objections, Defendant answers as follows:  Yes.

6      (a) Defendant has objected on the grounds above to the provision of private financial,

7  employment and contact information for absent class members.  With respect to the named Plaintiffs,

8  Schoulee Cones' income qualified for the exemption.

9      (b) Schoulee Cones received qualifying income for the entirety of her employment with

10  PAREXEL International LLC.

11      (c)  This interrogatory appears to be duplicative of Interrogatory Nos. 11.  To the extent this

12  interrogatory is inquiring as to all exemptions claimed, including the Highly Compensated Employee

13  exemption, Defendant refers to its response to Interrogatory No. 11.

14      (d) This interrogatory appears to be duplicative of Interrogatory Nos. 11.  To the extent this

15  interrogatory is inquiring as to all exemptions claimed, including the Highly Compensated Employee

16  exemption, Defendant refers to its response to Interrogatory No. 11.

17      (e) This interrogatory appears to be duplicative of Interrogatory Nos. 11.  To the extent this

18  interrogatory is inquiring as to all exemptions claimed, including the Highly Compensated Employee

19  exemption, Defendant refers to its response to Interrogatory No. 11.

20      (f) This interrogatory appears to be duplicative of Interrogatory Nos. 11.  To the extent this

21  interrogatory is inquiring as to all exemptions claimed, including the Highly Compensated Employee

22  exemption, Defendant refers to its response to Interrogatory No. 11.

23      (g) This interrogatory appears to be duplicative of Interrogatory Nos. 11.  To the extent this

24  interrogatory is inquiring as to all exemptions claimed, including the Highly Compensated Employee

25  exemption, Defendant refers to its response to Interrogatory No. 11.

26  **INTERROGATORY NO. 14:**

27      Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

28  positions of a "Clinical Monitoring Associate (In-House CRA)," a "Clinical Monitoring Associate (In-

51

1   House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

2   Research Associate II," or a "Senior Clinical Research Associate" within the United States by Parexel

3   International, LLC during the time period from December 22, 2013 through and including the date of

4   YOUR response was involved the management of Parexel International, LLC or was require to manage

5   the affairs of a customarily recognized department or subdivision of Parexel International, LLC; or was

6   require to customarily and regularly direct the work of two or more other employees of Parexel

7   International, LLC; or had the authority to hire or fire other Parexel International, LLC employees at any

8   time during their employment by Parexel International, LLC? If your answer is "yes," (a) set forth the

9   name, ADDRESS, telephone number, email address, job title and position, employment ADDRESS, and

10  dates of employment of each such person identified; (b) set forth all facts upon which YOU base YOUR

11  response; (c) set forth the name, ADDRESS, telephone number, email address, job title, employer, and

12  employment ADDRESS of each PERSON who has knowledge of those facts; (d) IDENTIFY each

13  DOCUMENT that supports YOUR response; and (e) set forth the name, ADDRESS, telephone number,

14  email address, job title, employer, and employment ADDRESS of each CUSTODIAN who has

15  possession of each DOCUMENT that supports YOUR response.

16  **RESPONSE TO NO. 14:**

17      Defendant objects to this request on the grounds that it is vague and ambiguous as to the

18  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

19  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

20  "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on

21  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

22  numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

23  of contentions, information and documents (subparts (a)-(e)) regarding *five* separate positions

24  enumerated by Plaintiff.

25      A party may not evade the limit of 25 interrogatories by propounding interrogatories with

26  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

27  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

28  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

1  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

2  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

3  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

4  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

5  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

6  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

7  (finding interrogatories asking for a "single piece of information" about *all products identified in*

8  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

9  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

10  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

11  Documents that You contend support each of your Affirmative Defenses, and all Persons with

12  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

13  where Defendant pled multiple affirmative defenses).

14      Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

15  interrogatory seeking contentions as to each and every putative class members is overbroad and

16  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

17  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

18  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

19  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

20  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

21  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

22  radically varies.

23      Defendant further objects to this contention interrogatory on the ground that it is premature, as

24  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

25  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

26  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

27  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

28  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1   *In re eBay Seller Antitrust Litig.,* C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

2   ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

3   discovery is undertaken. In fact, courts tend to deny contention interrogatories *filed before substantial*

4   *discovery has taken place,* but grant them if discovery is *almost complete*.") (emphasis added), *City &*

5   *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

6   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

7   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

8   interrogatories where substantial discovery had not been completed.)

9   Defendant further objects to the interrogatory to the extent it seeks information protected from

10  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

11  Defendant further objects to this interrogatory to the extent it seeks information protected by the

12  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

13  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

14  preparation of a compilation or summary.

15  **SUPPLEMENTAL RESPONSE TO NO. 14**

16  Defendant objects to this request on the grounds that it is vague and ambiguous as to the

17  enumerated positions ""Clinical Monitoring Associate (In-House CRA)," a "Clinical Monitoring

18  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

19  "Clinical Research Associate II," and a "Senior Clinical Research Associate." Plaintiffs have

20  subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

21  clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I. Defendant

22  also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

23  impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

24  five categories of contentions, information and documents (subparts (a)-(e)) regarding *five* separate

25  positions enumerated by Plaintiff.

26  A party may not evade the limit of 25 interrogatories by propounding interrogatories with

27  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

28  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

1  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

2  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

3  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

4  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

5  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

6  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

7  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

8  (finding interrogatories asking for a "single piece of information" about *all products identified in*

9  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

10 *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

11 sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

12 Documents that You contend support each of your Affirmative Defenses, and all Persons with

13 knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

14 where Defendant pled multiple affirmative defenses).

15      Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

16 interrogatory seeking contentions as to each and every putative class members is overbroad and

17 premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

18 showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

19 persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

20 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

21 contravene Rule 26's proportionality requirement.  This is particularly the case where the work

22 experiences, job assignments, and time spent on various duties between even the named Plaintiffs

23 radically varies.

24      Defendant further objects to this contention interrogatory on the ground that it is premature, as

25 discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

26 investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

27 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

28 receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

1  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

2  *In re eBay Seller Antitrust Litig.,* C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

3  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

4  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

5  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

6  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

7  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

8  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

9  interrogatories where substantial discovery had not been completed.)

10      Defendant further objects to the interrogatory to the extent it seeks information protected from

11  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

12  Defendant further objects to this interrogatory to the extent it seeks information protected by the

13  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

14  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

15  preparation of a compilation or summary.

16      Without waiving the foregoing objections, and to the extent this request is inquiring as to

17  whether Defendant is claiming the executive exemption, Defendant responds as follows:  No.

18

19  **INTERROGATORY NO. 15:**

20      Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

21  positions of a "Clinical Monitoring Associate (In-House CRA)," a "Clinical Monitoring Associate (In-

22  House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

23  Research Associate II," or a "Senior Clinical Research Associate" within the United States by Parexel

24  International, LLC during the time period from December 22, 2013 through and including the date of

25  YOUR response was required to be licensed or certified or to be primarily engaged in the practice of one

26  of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering,

27  teaching, or accounting at any time during their employment by Parexel International, LLC? If your

28  answer is "yes," (a) set forth the name, ADDRESS, telephone number, email address, job title and

1   position, employment ADDRESS, and dates of employment of each such person identified; (b) set forth

2   all facts upon which YOU base YOUR response; (c) set forth the name, ADDRESS, telephone number,

3   email address, job title, employer, and employment ADDRESS of each PERSON who has knowledge of

4   those facts; (d) IDENTIFY each DOCUMENT that supports YOUR response; and (e) set forth the

5   name, ADDRESS, telephone number, email address, job title, employer, and employment ADDRESS of

6   each CUSTODIAN who has possession of each DOCUMENT that supports YOUR response.

7   **RESPONSE TO NO. 15:**

8       Defendant objects to this request on the grounds that it is vague and ambiguous as to the

9   enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

10   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

11   "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

12   the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

13   numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

14   of contentions, information and documents (subparts (a)-(e)) regarding *five* separate positions

15   enumerated by Plaintiff.

16       A party may not evade the limit of 25 interrogatories by propounding interrogatories with

17   distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

18   (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

19   worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

20   Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

21   Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

22   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

23   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

24   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

25   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

26   (finding interrogatories asking for a "single piece of information" about *all products identified in*

27   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

28   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

57

1   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

2   Documents that You contend support each of your Affirmative Defenses, and all Persons with

3   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

4   where Defendant pled multiple affirmative defenses).

5        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

6   interrogatory seeking contentions as to each and every putative class members is overbroad and

7   premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

8   showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

9   persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

10  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

11  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

12  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

13  radically varies.

14       Defendant further objects to this contention interrogatory on the ground that it is premature, as

15  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

16  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

17  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

18  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

19  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

20  *In re eBay Seller Antitrust Litig.*,  C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

21  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

22  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

23  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

24  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

25  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

26  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

27  interrogatories where substantial discovery had not been completed.)

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    Defendant further objects to the interrogatory to the extent it seeks information protected from

2    disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

3    Defendant further objects to this interrogatory to the extent it seeks information protected by the

4    attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

5    Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

6    preparation of a compilation or summary.

7    **SUPPLEMENTAL RESPONSE TO NO. 15**

8    Defendant objects to this request on the grounds that it is vague and ambiguous as to the

9    enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

10   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

11   "Clinical Research Associate II," and a "Senior Clinical Research Associate." Plaintiffs have

12   subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

13   clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I. Defendant

14   also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

15   impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

16   five categories of contentions, information and documents (subparts (a)-(e)) regarding *six* separate

17   positions enumerated by Plaintiff.

18   A party may not evade the limit of 25 interrogatories by propounding interrogatories with

19   distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

20   (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

21   worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

22   Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

23   Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

24   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

25   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

26   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

27   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

28   (finding interrogatories asking for a "single piece of information" about *all products identified in*

59

1   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

2   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

3   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

4   Documents that You contend support each of your Affirmative Defenses, and all Persons with

5   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

6   where Defendant pled multiple affirmative defenses).

7         Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

8   interrogatory seeking contentions as to each and every putative class members is overbroad and

9   premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

10  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

11  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

12  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

13  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

14  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

15  radically varies.

16        Defendant further objects to this contention interrogatory on the ground that it is premature, as

17  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

18  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

19  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

20  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

21  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

22  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

23  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

24  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

25  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

26  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

27  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

28

1   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

2   interrogatories where substantial discovery had not been completed.)

3       Defendant further objects to the interrogatory to the extent it seeks information protected from

4   disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

5   Defendant further objects to this interrogatory to the extent it seeks information protected by the

6   attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

7   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

8   preparation of a compilation or summary.

9       Without waiving the foregoing objections, Defendant answers as follows:  Yes.

10       (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

11   positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class periods.

12       (b) Clinical Research Associates spend the majority of their time performing a scope of various

13   exempt duties requiring judgment and discretion, including but not limited to the monitoring and

14   evaluation of data integrity, detection of fraudulent reporting, escalation and suggested resolution of site

15   non-compliance, advice on patient recruiting plans, identification of trends of non-compliance,

16   recognition of areas of needed retraining, maintaining and promoting relations with the site staff,

17   evaluation of issues impacting patient safety, independently resolving site issues, questions and

18   concerns, including as to documentation, communication, and direction of the site, among other duties.

19   For each such duty, independent judgment and discretion is required and regularly exercised. The result

20   of the exercise of discretion and independent judgment is that Clinical Research Associates are able to

21   either or both make recommendations for action or take immediate action themselves. In doing so,

22   Clinical Research Associates have the authority to interpret and apply policies and procedures without

23   prior approval and take actions that bind Defendant on matters of significance within the study context.

24   Further, there is no active supervision of these positions, which are performed remotely. As such,

25   Clinical Research Associates must investigate, resolve, and plan matters of significance on behalf of

26   management when they are out in the field. Finally, the work that Clinical Research Associates perform

27   requires advanced knowledge in the field of medicine, pharmacology and life sciences.  These

28   employees receive extensive academic training given the technical and complex nature of their work.

1   The performance of these duties will vary from position to position and among the various CRA levels,

2   and individually among those holding the positions, depending upon a number of factors including but

3   not limited to the location of the study to which the CRA is assigned, the frequency of on-site visits to

4   the site location(s), the nature of the study (or studies) to which the CRA is assigned, the stage of the

5   study, the number of additional CMA or CRA positions assigned to the study, the experience, inclination

6   and work ethic of the CRA, complications, demands, or challenges unique to the study, and sponsor

7   requirements unite to the study.  In addition, Clinical Research Associates are assigned studies of

8   increasing complexity and more challenging therapeutic areas, commensurate with the CRA's level (e.g.

9   CRA I, CRA II, Senior CRA).  The failure to perform the reasonably expected duties of the position, as

10  in Schoulee Cones' case, does not permit an employee to avoid the exemption.

11          Clinical Monitoring Associates, including Plaintiff Dexter Pasis, spend (and spent) the majority

12  of their time performing a scope of various duties remotely, away from the sponsor site, including but

13  not limited to managing study sites, planning and strategically managing the path toward site

14  qualification, mentoring and training new CMAs, using judgment to assess and ensure overall integrity

15  of study implementation, ascertaining and recommending appropriate follow-up responses to issues at

16  clinical sites, establishing relationships with staff at study sites, maintaining a positive work

17  environment, building partnerships, communicating with team members, managing sites and protocols

18  independently, supporting less experienced staff on assignment, detection of fraudulent reporting,

19  escalation and suggested resolution of site non-compliance, advice on patient recruiting plans,

20  identification of trends of non-compliance, recognition of areas of needed retraining, and other functions

21  that require judgment and discretion at every step. In doing so, Clinical Monitoring Associates have the

22  authority to interpret and apply policies and procedures without prior approval and take actions that bind

23  Defendant on matters of significance within the study context.  As such, Clinical Monitoring Associates

24  must investigate and resolve matters of significance on behalf of management.

25          Finally, the work that Clinical Monitoring Associates perform requires advanced knowledge in

26  the field of medicine, pharmacology and life sciences.  These employees receive extensive academic

27  training given the technical and complex nature of their work.  The performance of these duties will vary

28  from position to position and among the various CMA levels and individually among those holding the

1   position, depending upon a number of factors including but not limited to the location of the study to

2   which the CMA is assigned, the nature of the study (or studies) to which the CMA is assigned, the stage

3   of the study, the number of additional CMA or CRA positions assigned to the study, the experience,

4   inclination, and work ethic of the CMA, complications, demands, or challenges unique to the study, and

5   sponsor requirements unite to the study.  In addition, Clinical Monitoring Associates are assigned

6   studies of increasing complexity and more challenging therapeutic areas, commensurate with the CMA's

7   level (e.g. CMA I, CMA II, Senior CMA).

8       (c) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar,

9   Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations;

10   Meaghan Marnell, Clinical Trial Operations Associate Director.

11       (d) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis

12   and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and

13   documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

14       (e) Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for

15   Production of Documents.

16   **INTERROGATORY NO. 16:**

17       Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

18   positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

19   House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

20   Research Associate II," or a "Senior Clinical Research Associate" within the United States by Parexel

21   International, LLC during the time period from December 22, 2013 through and including the date of

22   YOUR response had authority to commit Parexel International, LLC in matters that have significant

23   financial impact; or had authority to negotiate for and bind Parexel International, LLC on matters that

24   have significant financial impact; or provided consultation or expert advice to management of Parexel

25   International, LLC; or was involved in planning long- or short-term business objectives of Parexel

26   International, LLC at any time during their employment by Parexel International, LLC? If your answer

27   is "yes," (a) set forth the name, ADDRESS, telephone number, email address, job title and position,

28   employment ADDRESS, and dates of employment of each such person identified; (b) set forth all facts

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  upon which YOU base YOUR response; (c) set forth the name, ADDRESS, telephone number, email

2  address, job title, employer, and employment ADDRESS of each PERSON who has knowledge of those

3  facts; (d) IDENTIFY each DOCUMENT that supports YOUR response; and (e) set forth the name,

4  ADDRESS, telephone number, email address, job title, employer, and employment ADDRESS of each

5  CUSTODIAN who has possession of each DOCUMENT that supports YOUR response.

6  **RESPONSE TO NO. 16:**

7  Defendant objects to this request on the grounds that it is vague and ambiguous as to the

8  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

9  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

10  "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on

11  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

12  numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

13  of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

14  A party may not evade the limit of 25 interrogatories by propounding interrogatories with

15  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

16  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

17  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

18  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

19  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

20  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

21  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

22  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

23  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

24  (finding interrogatories asking for a "single piece of information" about *all products identified in*

25  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

26  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

27  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

28  Documents that You contend support each of your Affirmative Defenses, and all Persons with

1   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

2   where Defendant pled multiple affirmative defenses).

3        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

4   interrogatory seeking contentions as to each and every putative class members is overbroad and

5   premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

6   showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

7   persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

8   (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

9   contravene Rule 26's proportionality requirement.  This is particularly the case where the work

10  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

11  radically varies.

12       Defendant further objects to this contention interrogatory on the ground that it is premature, as

13  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

14  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

15  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

16  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

17  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

18  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

19  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

20  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

21  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

22  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

23  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

24  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

25  interrogatories where substantial discovery had not been completed.)

26       Defendant further objects to the interrogatory to the extent it seeks information protected from

27  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

28  Defendant further objects to this interrogatory to the extent it seeks information protected by the

65

1   attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

2   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

3   preparation of a compilation or summary.

4   **SUPPLEMENTAL RESPONSE NO. 16**

5       Defendant objects to this request on the grounds that it is vague and ambiguous as to the

6   enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

7   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

8   "Clinical Research Associate II," and a "Senior Clinical Research Associate." Plaintiffs have

9   subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

10   clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I. Defendant

11   also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

12   impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

13   five categories of contentions, information and documents regarding *six* separate positions enumerated

14   by Plaintiff.

15       A party may not evade the limit of 25 interrogatories by propounding interrogatories with

16   distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

17   (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

18   worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

19   Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

20   Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

21   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

22   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

23   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

24   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

25   (finding interrogatories asking for a "single piece of information" about *all products identified in*

26   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

27   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

28   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

1  Documents that You contend support each of your Affirmative Defenses, and all Persons with

2  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

3  where Defendant pled multiple affirmative defenses).

4         Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

5  interrogatory seeking contentions as to each and every putative class members is overbroad and

6  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

7  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

8  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

9  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

10  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

11  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

12  radically varies.

13         Defendant further objects to this contention interrogatory on the ground that it is premature, as

14  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

15  investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

16  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

17  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

18  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

19  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

20  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

21  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

22  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

23  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

24  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

25  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

26  interrogatories where substantial discovery had not been completed.)

27         Defendant further objects to the interrogatory to the extent it seeks information protected from

28  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

1  Defendant further objects to this interrogatory to the extent it seeks information protected by the

2  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

3  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

4  preparation of a compilation or summary.

5     Subject to the foregoing objections, Defendant answers: yes.

6     (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

7  positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class period.

8     (b) Employees in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA positions

9  are tasked with performing integral, highly complicated research and monitoring functions for

10  Defendant's core business function of providing clinical research services for pharmaceutical testing.

11     Clinical Research Associates primary duties involve performing a scope of various exempt duties

12  requiring judgment and discretion, including but not limited to the monitoring and evaluation of data

13  integrity, detection of fraudulent reporting, escalation and suggested resolution of site non-compliance,

14  advice on patient recruiting plans, identification of trends of non-compliance, recognition of areas of

15  needed retraining, maintaining and promoting relations with the site staff, evaluation of issues impacting

16  patient safety, independently resolving site issues, questions and concerns, including as to

17  documentation, communication, and direction of the site, among other duties. For each such duty,

18  independent judgment and discretion is required and regularly exercised. The result of the exercise of

19  discretion and independent judgment is that Clinical Research Associates are able to either or both make

20  recommendations for action or take immediate action themselves.  In doing so, Clinical Research

21  Associates have the authority to interpret and apply policies and procedures without prior approval and

22  take actions that bind Defendant on matters of significance within the study context. Further, there is no

23  active supervision of these positions, which are performed remotely. As such, Clinical Research

24  Associates must investigate, resolve, and plan matters of significance on behalf of management when

25  they are out in the field. Finally, the work that Clinical Research Associates perform requires advanced

26  knowledge in the field of medicine, pharmacology and life sciences.  These employees receive extensive

27  academic training given the technical and complex nature of their work.  The performance of these

28  duties will vary from position to position and among the various CRA levels and individually among

1   those holding the positions, depending upon a number of factors including but not limited to the location

2   of the study to which the CRA is assigned, the frequency of on-site visits to the site location(s), the

3   nature of the study (or studies) to which the CRA is assigned, the stage of the study, the number of

4   additional CMA or CRA positions assigned to the study, the experience, inclination and work ethic of

5   the CRA, complications, demands, or challenges unique to the study, and sponsor requirements unite to

6   the study.  In addition, Clinical Research Associates are assigned studies of increasing complexity and

7   more challenging therapeutic areas, commensurate with the CRA's level (e.g. CRA I, CRA II, Senior

8   CRA).  The failure to perform the reasonably expected duties of the position, as in Schoulee Cones'

9   case, does not permit an employee to avoid the exemption.

10       Clinical Monitoring Associates, including Plaintiff Dexter Pasis, primary duties involve and

11   involved performing a scope of various duties remotely, away from the sponsor site, including but not

12   limited to managing study sites, planning and strategically managing the path toward site qualification,

13   mentoring and training new CMAs, using judgment to assess and ensure overall integrity of study

14   implementation, ascertaining and recommending appropriate follow-up responses to issues at clinical

15   sites, establishing relationships with staff at study sites, maintaining a positive work environment,

16   building partnerships, communicating with team members, managing sites and protocols independently,

17   supporting less experienced staff on assignment, detection of fraudulent reporting, escalation and

18   suggested resolution of site non-compliance, advice on patient recruiting plans, identification of trends

19   of non-compliance, recognition of areas of needed retraining, and other functions that require judgment

20   and discretion at every step. In doing so, Clinical Monitoring Associates have the authority to interpret

21   and apply policies and procedures without prior approval and take actions that bind Defendant on

22   matters of significance within the study context.  As such, Clinical Monitoring Associates must

23   investigate and resolve matters of significance on behalf of management.

24       The performance of these duties will vary from position to position and among the various CMA

25   levels and individually among those holding the position, depending upon a number of factors including

26   but not limited to the location of the study to which the CMA is assigned, the nature of the study (or

27   studies) to which the CMA is assigned, the stage of the study, the number of additional CMA or CRA

28   positions assigned to the study, the experience, inclination and work ethic of the CMA, complications,

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    demands, or challenges unique to the study, and sponsor requirements unite to the study.  In addition,

2    Clinical Monitoring Associates are assigned studies of increasing complexity and more challenging

3    therapeutic areas, commensurate with the CMA's level (e.g. CMA I, CMA II, Senior CMA).

4         (c) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar,

5    Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations;

6    Meaghan Marnell, Clinical Trial Operations Associate Director.

7         (d) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis

8    and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and

9    documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

10        (e)  Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for

11   Production of Documents.

12   **INTERROGATORY NO. 17:**

13        Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

14   positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

15   House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

16   Research Associate II," or a "Senior Clinical Research Associate" within the United States by Parexel

17   International, LLC during the time period from December 22, 2013 through and including the date of

18   YOUR response had authority to waive or deviate from established policies and procedures of Parexel

19   International, LLC or Parexel International, LLC's customers without prior approval of Parexel

20   International, LLC or Parexel International, LLC's customers at any time during their employment by

21   Parexel International, LLC? If your answer is "yes," (a) set forth the name, ADDRESS, telephone

22   number, email address, job title and position, employment ADDRESS, and dates of employment of each

23   such person identified; (b) set forth all facts upon which YOU base YOUR response; (c) set forth the

24   names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; (d)

25   IDENTIFY each DOCUMENT that supports YOUR response; and (e) set forth the name, ADDRESS,

26   telephone number, email address, job title, employer, and employment ADDRESS of each

27   CUSTODIAN who has possession of each DOCUMENT that supports YOUR. response.

28

**RESPONSE TO NO. 17:**

Defendant objects to this request on the grounds that it is vague and ambiguous as to the enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits where Defendant pled multiple affirmative defenses).

Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the interrogatory seeking contentions as to each and every putative class members is overbroad and premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

71

1  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

2  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

3  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

4  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

5  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

6  radically varies.

7      Defendant further objects to this contention interrogatory on the ground that it is premature, as

8  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

9  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

10  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

11  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

12  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

13  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

14  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

15  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

16  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

17  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

18  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

19  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

20  interrogatories where substantial discovery had not been completed.)

21      Defendant further objects to the interrogatory to the extent it seeks information protected from

22  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

23  Defendant further objects to this interrogatory to the extent it seeks information protected by the

24  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

25  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

26  preparation of a compilation or summary.

27  **SUPPLEMENTAL RESPONSE TO NO. 17**

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1       Defendant objects to this request on the grounds that it is vague and ambiguous as to the

2  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

3  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

4  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

5  subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

6  clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I.  Defendant

7  also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

8  impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

9  five categories of contentions, information and documents regarding *six* separate positions enumerated

10  by Plaintiff.

11       A party may not evade the limit of 25 interrogatories by propounding interrogatories with

12  distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

13  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

14  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

15  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

16  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

17  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

18  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

19  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

20  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

21  (finding interrogatories asking for a "single piece of information" about *all products identified in*

22  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

23  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

24  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

25  Documents that You contend support each of your Affirmative Defenses, and all Persons with

26  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

27  where Defendant pled multiple affirmative defenses).

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

2  interrogatory seeking contentions as to each and every putative class members is overbroad and

3  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

4  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

5  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

6  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

7  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

8  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

9  radically varies.

10  Defendant further objects to this contention interrogatory on the ground that it is premature, as

11  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

12  investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

13  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

14  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

15  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

16  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

17  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

18  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

19  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

20  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

21  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

22  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

23  interrogatories where substantial discovery had not been completed.)

24  Defendant further objects to the interrogatory to the extent it seeks information protected from

25  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

26  Defendant further objects to this interrogatory to the extent it seeks information protected by the

27  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

2   preparation of a compilation or summary.

3          Subject to the foregoing objections, Defendant answers: yes.

4          (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

5   positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class period.

6          (b) Employees in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA positions

7   are tasked with performing integral, highly complicated research and monitoring functions for

8   Defendant's core business function of providing clinical research services for pharmaceutical testing.

9          Clinical Research Associates primary duties involve performing a scope of various exempt duties

10  requiring judgment and discretion, including but not limited to the monitoring and evaluation of data

11  integrity, detection of fraudulent reporting, escalation and suggested resolution of site non-compliance,

12  advice on patient recruiting plans, identification of trends of non-compliance, recognition of areas of

13  needed retraining, maintaining and promoting relations with the site staff, evaluation of issues impacting

14  patient safety, independently resolving site issues, questions and concerns, including as to

15  documentation, communication, and direction of the site, among other duties. For each such duty,

16  independent judgment and discretion is required and regularly exercised. The result of the exercise of

17  discretion and independent judgment is that Clinical Research Associates are able to either or both make

18  recommendations for action or take immediate action themselves. In doing so, Clinical Research

19  Associates have the authority to interpret and apply policies and procedures without prior approval and

20  take actions that bind Defendant on matters of significance within the study context. Further, there is no

21  active supervision of these positions, which are performed remotely. As such, Clinical Research

22  Associates must investigate, resolve, and plan matters of significance on behalf of management when

23  they are out in the field. Finally, the work that Clinical Research Associates perform requires advanced

24  knowledge in the field of medicine, pharmacology and life sciences. These employees receive extensive

25  academic training given the technical and complex nature of their work. The performance of these

26  duties will vary from position to position and among the various CRA levels and individually among

27  those holding the positions, depending upon a number of factors including but not limited to the location

28  of the study to which the CRA is assigned, the frequency of on-site visits to the site location(s), the

75

1    nature of the study (or studies) to which the CRA is assigned, the stage of the study, the number of

2    additional CMA or CRA positions assigned to the study, the experience inclination and work ethic of the

3    CRA, complications, demands, or challenges unique to the study, and sponsor requirements unite to the

4    study.  In addition, Clinical Research Associates are assigned studies of increasing complexity and more

5    challenging therapeutic areas, commensurate with the CRA's level (e.g. CRA I, CRA II, Senior CRA).

6    The failure to perform the reasonably expected duties of the position, as in Schoulee Cones' case, does

7    not permit an employee to avoid the exemption.

8         Clinical Monitoring Associates, including Plaintiff Dexter Pasis, primary duties involve and

9    involved performing a scope of various duties remotely, away from the sponsor site, including but not

10   limited to managing study sites, planning and strategically managing the path toward site qualification,

11   mentoring and training new CMAs, using judgment to assess and ensure overall integrity of study

12   implementation, ascertaining and recommending appropriate follow-up responses to issues at clinical

13   sites, establishing relationships with staff at study sites, maintaining a positive work environment,

14   building partnerships, communicating with team members, managing sites and protocols independently,

15   supporting less experienced staff on assignment, detection of fraudulent reporting, escalation and

16   suggested resolution of site non-compliance, advice on patient recruiting plans, identification of trends

17   of non-compliance, recognition of areas of needed retraining, and other functions that require judgment

18   and discretion at every step. In doing so, Clinical Monitoring Associates have the authority to interpret

19   and apply policies and procedures without prior approval and take actions that bind Defendant on

20   matters of significance within the study context.  As such, Clinical Monitoring Associates must

21   investigate and resolve matters of significance on behalf of management.

22        Finally, the work that Clinical Monitoring Associates perform requires advanced knowledge in

23   the field of medicine, pharmacology and life sciences.  These employees receive extensive academic

24   training given the technical and complex nature of their work.  The performance of these duties will vary

25   from position to position and among the various CMA levels and individually among those holding the

26   position, depending upon a number of factors including but not limited to the location of the study to

27   which the CMA is assigned, the nature of the study (or studies) to which the CMA is assigned, the stage

28   of the study, the number of additional CMA or CRA positions assigned to the study, the experience,

76

1   inclination, and work ethic of the CMA, complications, demands, or challenges unique to the study, and

2   sponsor requirements unite to the study.  In addition, Clinical Monitoring Associates are assigned

3   studies of increasing complexity and more challenging therapeutic areas, commensurate with the CMA's

4   level (e.g. CMA I, CMA II, Senior CMA).

5        (c) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar,

6   Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations;

7   Meaghan Marnell, Clinical Trial Operations Associate Director.

8        (d) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis

9   and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and

10  documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

11       (e) Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for

12  Production of Documents.

13  **INTERROGATORY NO. 18:**

14       Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

15  positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

16  House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

17  Research Associate II," or a "Senior Clinical Research Associate" within the State of California by

18  Parexel International, LLC during the time period from December 22, 2012 through and ) including the

19  date of YOUR response was involved the management of Parexel International, LLC or was require to

20  manage the affairs of a customarily recognized department or subdivision of Parexel International, LLC;

21  or was require to customarily and regularly direct the work of two or more other employees of Parexel

22  International, LLC; or had the authority to hire or fire other Parexel International, LLC employees at any

23  time during their employment by Parexel International, LLC? If your answer is "yes," (a) set forth the

24  name, ADDRESS, telephone number, email address, job title and position, employment ADDRESS, and

25  dates of employment of each such person identified; (b) set forth all facts upon which YOU base YOUR

26  response; (c) set forth the name, ADDRESS, telephone number, email address, job title, employer, and

27  employment ADDRESS of each PERSON who has knowledge of those facts; (d) IDENTIFY each

28  DOCUMENT that supports YOUR response; and (e) set forth the name, ADDRESS, telephone number,

1   email address, job title, employer, and employment ADDRESS of each CUSTODIAN who has

2   possession of each DOCUMENT that supports YOUR response.

3   **RESPONSE TO NO. 18:**

4          Defendant objects to this request on the grounds that it is vague and ambiguous as to the

5   enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

6   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

7   "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on

8   the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

9   numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

10  of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

11         A party may not evade the limit of 25 interrogatories by propounding interrogatories with

12  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

13  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

14  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

15  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

16  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

17  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

18  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

19  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

20  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

21  (finding interrogatories asking for a "single piece of information" about *all products identified in*

22  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

23  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

24  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

25  Documents that You contend support each of your Affirmative Defenses, and all Persons with

26  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

27  where Defendant pled multiple affirmative defenses).

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

2    interrogatory seeking contentions as to each and every putative class members is overbroad and

3    premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

4    showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

5    persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

6    (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

7    contravene Rule 26's proportionality requirement.  This is particularly the case where the work

8    experiences, job assignments, and time spent on various duties between even the named Plaintiffs

9    radically varies.

10    Defendant further objects to this contention interrogatory on the ground that it is premature, as

11    discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

12    investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

13    2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

14    receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

15    contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

16    *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

17    ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

18    discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

19    *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

20    *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

21    plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

22    litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

23    interrogatories where substantial discovery had not been completed.)

24    Defendant further objects to the interrogatory to the extent it seeks information protected from

25    disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

26    Defendant further objects to this interrogatory to the extent it seeks information protected by the

27    attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

28

1    Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

2    preparation of a compilation or summary.

3    **SUPPLEMENTAL RESPONSE TO NO. 18:**

4          Defendant objects to this request on the grounds that it is vague and ambiguous as to the

5    enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

6    Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

7    "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

8    subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

9    clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I.  Defendant

10   also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

11   impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

12   five categories of contentions, information and documents (subparts (a)-(e)) regarding *six* separate

13   positions enumerated by Plaintiff.

14          A party may not evade the limit of 25 interrogatories by propounding interrogatories with

15   distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

16   (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

17   worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

18   Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

19   Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

20   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

21   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

22   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

23   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

24   (finding interrogatories asking for a "single piece of information" about *all products identified in*

25   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

26   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

27   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

28   Documents that You contend support each of your Affirmative Defenses, and all Persons with

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

2   where Defendant pled multiple affirmative defenses).

3        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

4   interrogatory seeking contentions as to each and every putative class members is overbroad and

5   premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

6   showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

7   persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

8   (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

9   contravene Rule 26's proportionality requirement.  This is particularly the case where the work

10  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

11  radically varies.

12       Defendant further objects to this contention interrogatory on the ground that it is premature, as

13  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

14  investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

15  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

16  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

17  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

18  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

19  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

20  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

21  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

22  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

23  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

24  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

25  interrogatories where substantial discovery had not been completed.)

26       Defendant further objects to the interrogatory to the extent it seeks information protected from

27  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

28  Defendant further objects to this interrogatory to the extent it seeks information protected by the

81

1   attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

2   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

3   preparation of a compilation or summary.

4   　　　Without waiving the foregoing objections, and to the extent this request is inquiring as to

5   whether Defendant is claiming the executive exemption, Defendant responds as follows:  No.

6   **INTERROGATORY NO. 19:**

7   　　　Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

8   positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

9   House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

10  Research Associate II," or a "Senior Clinical Research Associate" within the State of California by

11  Parexel International, LLC during the time period from December 22, 2012 through and including the

12  date of YOUR response was required to be licensed or certified by the State of California or to be

13  primarily engaged in the practice of one of the following recognized professions: law, medicine,

14  dentistry, optometry, architecture, engineering, teaching, or accounting at any time during their

15  employment by Parexel International, LLC? If your answer is "yes," (a) set forth the name, ADDRESS,

16  telephone number, email address, job title and position, employment ADDRESS, and dates of

17  employment, of each such person identified; (b) set forth all facts upon which YOU base YOUR

18  response; (c) set forth the name, ADDRESS, telephone number, email address, job title, employer, and

19  employment ADDRESS of each PERSON who has knowledge of those facts; (d) IDENTIFY each

20  DOCUMENT that supports YOUR response; and (e) set forth the name, ADDRESS, telephone number,

21  email address, job title, employer, and employment ADDRESS of each CUSTODIAN who has

22  possession of each DOCUMENT that supports YOUR response.

23  **RESPONSE TO NO. 19:**

24  　　　Defendant objects to this request on the grounds that it is vague and ambiguous as to the

25  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

26  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

27  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

28  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

82

1   numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

2   of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

3        A party may not evade the limit of 25 interrogatories by propounding interrogatories with

4   distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

5   (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

6   worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

7   Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

8   Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

9   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

10   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

11   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

12   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

13   (finding interrogatories asking for a "single piece of information" about *all products identified in*

14   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

15   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

16   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

17   Documents that You contend support each of your Affirmative Defenses, and all Persons with

18   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

19   where Defendant pled multiple affirmative defenses).

20        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

21   interrogatory seeking contentions as to each and every putative class members is overbroad and

22   premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

23   showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

24   persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

25   (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

26   contravene Rule 26's proportionality requirement.  This is particularly the case where the work

27   experiences, job assignments, and time spent on various duties between even the named Plaintiffs

28   radically varies.

1   Defendant further objects to this contention interrogatory on the ground that it is premature, as

2   discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

3   investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

4   2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

5   receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

6   contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

7   *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

8   ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

9   discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

10  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

11  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

12  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

13  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

14  interrogatories where substantial discovery had not been completed.)

15   Defendant further objects to the interrogatory to the extent it seeks information protected from

16  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

17  Defendant further objects to this interrogatory to the extent it seeks information protected by the

18  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

19  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

20  preparation of a compilation or summary.

21  **SUPPLEMENTAL RESPONSE TO NO. 19:**

22   Defendant objects to this request on the grounds that it is vague and ambiguous as to the

23  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

24  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

25  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

26  subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

27  clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I.  Defendant

28  also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

84

1  impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

2  five categories of contentions, information and documents (subparts (a)-(e)) regarding *six* separate

3  positions enumerated by Plaintiff.

4      A party may not evade the limit of 25 interrogatories by propounding interrogatories with

5  distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

6  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

7  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

8  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

9  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

10  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

11  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

12  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

13  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

14  (finding interrogatories asking for a "single piece of information" about *all products identified in*

15  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

16  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

17  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

18  Documents that You contend support each of your Affirmative Defenses, and all Persons with

19  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

20  where Defendant pled multiple affirmative defenses).

21      Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

22  interrogatory seeking contentions as to each and every putative class members is overbroad and

23  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

24  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

25  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

26  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

27  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

28

1  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

2  radically varies.

3       Defendant further objects to this contention interrogatory on the ground that it is premature, as

4  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

5  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

6  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

7  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

8  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

9  *In re eBay Seller Antitrust Litig.,* C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

10  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

11  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

12  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

13  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

14  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

15  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

16  interrogatories where substantial discovery had not been completed.)

17       Defendant further objects to the interrogatory to the extent it seeks information protected from

18  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

19  Defendant further objects to this interrogatory to the extent it seeks information protected by the

20  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

21  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

22  preparation of a compilation or summary.

23       Without waiving the foregoing objections, Defendant answers as follows:  Yes.

24       (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

25  positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class periods.

26       (b) Clinical Research Associates spend the majority of their time performing a scope of various

27  exempt duties requiring judgment and discretion, including but not limited to the monitoring and

28  evaluation of data integrity, detection of fraudulent reporting, escalation and suggested resolution of site

86

1   non-compliance, advice on patient recruiting plans, identification of trends of non-compliance,

2   recognition of areas of needed retraining, maintaining and promoting relations with the site staff,

3   evaluation of issues impacting patient safety, independently resolving site issues, questions and

4   concerns, including as to documentation, communication, and direction of the site, among other duties.

5   For each such duty, independent judgment and discretion is required and regularly exercised. The result

6   of the exercise of discretion and independent judgment is that Clinical Research Associates are able to

7   either or both make recommendations for action or take immediate action themselves. In doing so,

8   Clinical Research Associates have the authority to interpret and apply policies and procedures without

9   prior approval and take actions that bind Defendant on matters of significance within the study context.

10   Further, there is no active supervision of these positions, which are performed remotely. As such,

11   Clinical Research Associates must investigate, resolve, and plan matters of significance on behalf of

12   management when they are out in the field. Finally, the work that Clinical Research Associates perform

13   requires advanced knowledge in the field of medicine, pharmacology and life sciences.  These

14   employees receive extensive academic training given the technical and complex nature of their work.

15   The performance of these duties will vary from position to position and among the various CRA levels,

16   and individually among those holding the positions, depending upon a number of factors including but

17   not limited to the location of the study to which the CRA is assigned, the frequency of on-site visits to

18   the site location(s), the nature of the study (or studies) to which the CRA is assigned, the stage of the

19   study, the number of additional CMA or CRA positions assigned to the study, the experience, inclination

20   and work ethic of the CRA, complications, demands, or challenges unique to the study, and sponsor

21   requirements unite to the study.  In addition, Clinical Research Associates are assigned studies of

22   increasing complexity and more challenging therapeutic areas, commensurate with the CRA's level (e.g.

23   CRA I, CRA II, Senior CRA).  The failure to perform the reasonably expected duties of the position, as

24   in Schoulee Cones' case, does not permit an employee to avoid the exemption.

25        Clinical Monitoring Associates, including Plaintiff Dexter Pasis, spend and spent the majority of

26   their time performing a scope of various duties remotely, away from the sponsor site, including but not

27   limited to managing study sites, planning and strategically managing the path toward site qualification,

28   mentoring and training new CMAs, using judgment to assess and ensure overall integrity of study

1   implementation, ascertaining and recommending appropriate follow-up responses to issues at clinical

2   sites, establishing relationships with staff at study sites, maintaining a positive work environment,

3   building partnerships, communicating with team members, managing sites and protocols independently,

4   supporting less experienced staff on assignment, detection of fraudulent reporting, escalation and

5   suggested resolution of site non-compliance, advice on patient recruiting plans, identification of trends

6   of non-compliance, recognition of areas of needed retraining, and other functions that require judgment

7   and discretion at every step. In doing so, Clinical Monitoring Associates have the authority to interpret

8   and apply policies and procedures without prior approval and take actions that bind Defendant on

9   matters of significance within the study context.  As such, Clinical Monitoring Associates must

10  investigate and resolve matters of significance on behalf of management.

11      Finally, the work that Clinical Monitoring Associates perform requires advanced knowledge in

12  the field of medicine, pharmacology and life sciences.  These employees receive extensive academic

13  training given the technical and complex nature of their work.  The performance of these duties will vary

14  from position to position and among the various CMA levels and individually among those holding the

15  position, depending upon a number of factors including but not limited to the location of the study to

16  which the CMA is assigned, the nature of the study (or studies) to which the CMA is assigned, the stage

17  of the study, the number of additional CMA or CRA positions assigned to the study, the experience,

18  inclination, and work ethic of the CMA, complications, demands, or challenges unique to the study, and

19  sponsor requirements unite to the study.  In addition, Clinical Monitoring Associates are assigned

20  studies of increasing complexity and more challenging therapeutic areas, commensurate with the CMA's

21  level (e.g. CMA I, CMA II, Senior CMA).

22      (c) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar,

23  Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations;

24  Meaghan Marnell, Clinical Trial Operations Associate Director.

25      (d) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis

26  and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and

27  documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  (e) Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for

2 Production of Documents.

3 **INTERROGATORY NO. 20:**

4  Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

5 positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

6 House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

7 Research Associate II," or a "Senior Clinical Research Associate" within the State of California by

8 Parexel International, LLC during the time period from December 22, 2012 through and including the

9 date of YOUR response had authority to commit Parexel International, LLC in matters that have

10 significant financial impact; or had authority to negotiate for and bind Parexel International, LLC on

11 matters that have significant financial impact; or provided consultation or expert advice to management

12 of Parexel International, LLC; or was involved in planning long- or short-term business objectives of

13 Parexel International, LLC at any time during their employment by Parexel International, LLC? If your

14 answer is "yes," (a) set forth the name, ADDRESS, telephone number, email address, job title and

15 position, employment ADDRESS, and dates of employment of each such person identified; (b) set forth

16 all facts upon which YOU base YOUR response; (c) set forth the name, ADDRESS, telephone number,

17 email address, job title, employer, and employment ADDRESS of each PERSON who has knowledge of

18 those facts; (d) IDENTIFY each DOCUMENT that supports YOUR response; and (e) set forth 5 the

19 name, ADDRESS, telephone number, email address, job title, employer, and 5 employment ADDRESS

20 of each CUSTODIAN who has possession of each 7 DOCUMENT that supports YOUR response.

21 **RESPONSE TO NO. 20:**

22  Defendant objects to this request on the grounds that it is vague and ambiguous as to the

23 enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

24 Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

25 "Clinical Research Associate II," and a "Senior Clinical Research Associate." Defendant also objects on

26 the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

27 numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

28 of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits where Defendant pled multiple affirmative defenses).

Defendant objects that the interrogatory is premature as no class has been certified. Thus, the interrogatory seeking contentions as to each and every putative class members is overbroad and premature, as Plaintiffs currently represent only themselves. Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement. This is particularly the case where the work experiences, job assignments, and time spent on various duties between even the named Plaintiffs radically varies.

Defendant further objects to this contention interrogatory on the ground that it is premature, as discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

2    2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

3    receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

4    contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

5    *In re eBay Seller Antitrust Litig.,*  C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

6    ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

7    discovery is undertaken.  In fact, courts tend to deny contention interrogatories f*iled before substantial*

8    *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

9    *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

10   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

11   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

12   interrogatories where substantial discovery had not been completed.)

13        Defendant further objects to the interrogatory to the extent it seeks information protected from

14   disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

15   Defendant further objects to this interrogatory to the extent it seeks information protected by the

16   attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

17   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

18   preparation of a compilation or summary.

19   **SUPPLEMENTAL RESPONSE TO NO. 20:**

20        Defendant objects to this request on the grounds that it is vague and ambiguous as to the

21   enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

22   Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

23   "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

24   subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

25   clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I.  Defendant

26   also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

27   impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    five categories of contentions, information and documents regarding *six* separate positions enumerated

2    by Plaintiff.

3        A party may not evade the limit of 25 interrogatories by propounding interrogatories with

4    distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

5    (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

6    worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

7    Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

8    Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

9    to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

10    WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

11    facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

12    requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

13    (finding interrogatories asking for a "single piece of information" about *all products identified in*

14    *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

15    *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

16    sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

17    Documents that You contend support each of your Affirmative Defenses, and all Persons with

18    knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

19    where Defendant pled multiple affirmative defenses).

20        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

21    interrogatory seeking contentions as to each and every putative class members is overbroad and

22    premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

23    showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

24    persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

25    (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

26    contravene Rule 26's proportionality requirement.  This is particularly the case where the work

27    experiences, job assignments, and time spent on various duties between even the named Plaintiffs

28    radically varies.

1    Defendant further objects to this contention interrogatory on the ground that it is premature, as

2    discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

3    investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

4    2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

5    receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

6    contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

7    *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

8    ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

9    discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

10   *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

11   *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

12   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

13   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

14   interrogatories where substantial discovery had not been completed.)

15   Defendant further objects to the interrogatory to the extent it seeks information protected from

16   disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

17   Defendant further objects to this interrogatory to the extent it seeks information protected by the

18   attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

19   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

20   preparation of a compilation or summary.

21   Subject to the foregoing objections, Defendant answers: yes.

22   (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

23   positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class period.

24   (b) Employees in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA positions

25   are tasked with performing integral, highly complicated research and monitoring functions for

26   Defendant's core business function of providing clinical research services for pharmaceutical testing.

27   Clinical Research Associates spend the majority of their time performing a scope of various

28   exempt duties requiring judgment and discretion, including but not limited to the monitoring and

1  evaluation of data integrity, detection of fraudulent reporting, escalation and suggested resolution of site

2  non-compliance, advice on patient recruiting plans, identification of trends of non-compliance,

3  recognition of areas of needed retraining, maintaining and promoting relations with the site staff,

4  evaluation of issues impacting patient safety, independently resolving site issues, questions and

5  concerns, including as to documentation, communication, and direction of the site, among other duties.

6  For each such duty, independent judgment and discretion is required and regularly exercised. The result

7  of the exercise of discretion and independent judgment is that Clinical Research Associates are able to

8  either or both make recommendations for action or take immediate action themselves. In doing so,

9  Clinical Research Associates have the authority to interpret and apply policies and procedures without

10  prior approval and take actions that bind Defendant on matters of significance within the study context.

11  Further, there is no active supervision of these positions, which are performed remotely. As such,

12  Clinical Research Associates must investigate, resolve, and plan matters of significance on behalf of

13  management when they are out in the field. Finally, the work that Clinical Research Associates perform

14  requires advanced knowledge in the field of medicine, pharmacology and life sciences.  These

15  employees receive extensive academic training given the technical and complex nature of their work.

16  The performance of these duties will vary from position to position and among the various CRA levels

17  and individually among those holding the positions, depending upon a number of factors including but

18  not limited to the location of the study to which the CRA is assigned, the frequency of on-site visits to

19  the site location(s), the nature of the study (or studies) to which the CRA is assigned, the stage of the

20  study, the number of additional CMA or CRA positions assigned to the study, the experience,

21  inclination, and work ethic of the CRA, complications, demands, or challenges unique to the study, and

22  sponsor requirements unite to the study.  In addition, Clinical Research Associates are assigned studies

23  of increasing complexity and more challenging therapeutic areas, commensurate with the CRA's level

24  (e.g. CRA I, CRA II, Senior CRA).  The failure to perform the reasonably expected duties of the

25  position, as in Schoulee Cones' case, does not permit an employee to avoid the exemption.

26  Clinical Monitoring Associates, including Plaintiff Dexter Pasis, spend and spent the majority of

27  their time performing a scope of various duties remotely, away from the sponsor site, including but

28  limited to managing study sites, planning and strategically managing the path toward site qualification,

94

1    mentoring and training new CMAs, using judgment to assess and ensure overall integrity of study

2    implementation, ascertaining and recommending appropriate follow-up responses to issues at clinical

3    sites, establishing relationships with staff at study sites, maintaining a positive work environment,

4    building partnerships, communicating with team members, managing sites and protocols independently,

5    supporting less experienced staff on assignment, detection of fraudulent reporting, escalation and

6    suggested resolution of site non-compliance, advice on patient recruiting plans, identification of trends

7    of non-compliance, recognition of areas of needed retraining, and other functions that require judgment

8    and discretion at every step. In doing so, Clinical Monitoring Associates have the authority to interpret

9    and apply policies and procedures without prior approval and take actions that bind Defendant on

10   matters of significance within the study context.  As such, Clinical Monitoring Associates must

11   investigate and resolve matters of significance on behalf of management.

12         Finally, the work that Clinical Monitoring Associates perform requires advanced knowledge in

13   the field of medicine, pharmacology and life sciences.  These employees receive extensive academic

14   training given the technical and complex nature of their work.  The performance of these duties will vary

15   from position to position and among the various CMA levels and individually among those holding the

16   position, depending upon a number of factors including but not limited to the location of the study to

17   which the CMA is assigned, the nature of the study (or studies) to which the CMA is assigned, the stage

18   of the study, the number of additional CMA or CRA positions assigned to the study, the experience,

19   inclination, and work ethic of the CMA, complications, demands, or challenges unique to the study, and

20   sponsor requirements unite to the study.  In addition, Clinical Monitoring Associates are assigned

21   studies of increasing complexity and more challenging therapeutic areas, commensurate with the CMA's

22   level (e.g. CMA I, CMA II, Senior CMA).

23         (c) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar,

24   Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations;

25   Meaghan Marnell, Clinical Trial Operations Associate Director.

26         (d) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis

27   and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and

28   documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

1   (e) Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for

2   Production of Documents.

3   **INTERROGATORY NO. 21:**

4       Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

5   positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

6   House CRA)," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research

7   Associate II," or a "Senior Clinical Research Associate" within the State of California by Parexel

8   International, LLC during the time period from December 22, 2012 through and including the date of

9   YOUR response had authority to waive or deviate from established policies and procedures of Parexel

10  International, LLC or Parexel International, LLC's customers without prior approval of Parexel

11  International, LLC or Parexel International, LLC's customers at any time during their employment by

12  Parexel International, LLC? If your answer is "yes," (a) set forth the name, ADDRESS, telephone

13  number, email address, job title and position, employment ADDRESS, and dates of employment of each

14  such person identified; (b) set forth all facts upon which YOU base YOUR response; (c) set forth the

15  names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; (d)

16  IDENTIFY each DOCUMENT that supports YOUR response; and (e) set forth the name, ADDRESS,

17  telephone number, email address, job title, employer, and employment ADDRESS of each

18  CUSTODIAN who has possession of each DOCUMENT that supports YOUR response.

19  **RESPONSE TO NO. 21:**

20      Defendant objects to this request on the grounds that it is vague and ambiguous as to the

21  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

22  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

23  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

24  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

25  numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

26  of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

27      A party may not evade the limit of 25 interrogatories by propounding interrogatories with

28  distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

1  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

2  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

3  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

4  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

5  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

6  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

7  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

8  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

9  (finding interrogatories asking for a "single piece of information" about *all products identified in*

10  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

11  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

12  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

13  Documents that You contend support each of your Affirmative Defenses, and all Persons with

14  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

15  where Defendant pled multiple affirmative defenses).

16        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

17  interrogatory seeking contentions as to each and every putative class members is overbroad and

18  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

19  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

20  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

21  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

22  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

23  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

24  radically varies.

25        Defendant further objects to this contention interrogatory on the ground that it is premature, as

26  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

27  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

28  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

1   receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

2   contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

3   *In re eBay Seller Antitrust Litig.,* C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

4   ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

5   discovery is undertaken. In fact, courts tend to deny contention interrogatories *filed before substantial*

6   *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

7   *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

8   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

9   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

10  interrogatories where substantial discovery had not been completed.)

11    Defendant further objects to the interrogatory to the extent it seeks information protected from

12  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

13  Defendant further objects to this interrogatory to the extent it seeks information protected by the

14  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

15  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

16  preparation of a compilation or summary.

17  **SUPPLEMENTAL RESPONSE TO NO. 21**

18    Defendant objects to this request on the grounds that it is vague and ambiguous as to the

19  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

20  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

21  "Clinical Research Associate II," and a "Senior Clinical Research Associate." Plaintiffs have

22  subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

23  clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I. Defendant

24  also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

25  impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

26  five categories of contentions, information and documents regarding *six* separate positions enumerated

27  by Plaintiff.

28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011) (finding interrogatories asking for a "single piece of information" about *all products identified in Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of your Affirmative Defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits where Defendant pled multiple affirmative defenses).

Defendant objects that the interrogatory is premature as no class has been certified. Thus, the interrogatory seeking contentions as to each and every putative class members is overbroad and premature, as Plaintiffs currently represent only themselves. Plaintiffs have not met the prima facie showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly, contravene Rule 26's proportionality requirement. This is particularly the case where the work experiences, job assignments, and time spent on various duties between even the named Plaintiffs radically varies.

Defendant further objects to this contention interrogatory on the ground that it is premature, as discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

99

1   investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

2   2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

3   receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

4   contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

5   *In re eBay Seller Antitrust Litig.*,  C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

6   ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

7   discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

8   *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

9   *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

10   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

11   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

12   interrogatories where substantial discovery had not been completed.)

13        Defendant further objects to the interrogatory to the extent it seeks information protected from

14   disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

15   Defendant further objects to this interrogatory to the extent it seeks information protected by the

16   attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

17   Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

18   preparation of a compilation or summary.

19        Subject to the foregoing objections, Defendant answers: yes.

20        (a) All persons employed in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA

21   positions, including Plaintiffs Shoulee Cones and Dexter Pasis, during the relevant class period.

22        (b) Employees in the CRA I, CRA II, Senior CRA, CMA I, CMA II, and Senior CMA positions

23   are tasked with performing integral, highly complicated research and monitoring functions for

24   Defendant's core business function of providing clinical research services for pharmaceutical testing.

25        Clinical Research Associates spend the majority of their time performing a scope of various

26   exempt duties requiring judgment and discretion, including but not limited to the monitoring and

27   evaluation of data integrity, detection of fraudulent reporting, escalation and suggested resolution of site

28   non-compliance, advice on patient recruiting plans, identification of trends of non-compliance,

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  recognition of areas of needed retraining, maintaining and promoting relations with the site staff,

2  evaluation of issues impacting patient safety, independently resolving site issues, questions and

3  concerns, including as to documentation, communication, and direction of the site, among other duties.

4  For each such duty, independent judgment and discretion is required and regularly exercised. The result

5  of the exercise of discretion and independent judgment is that Clinical Research Associates are able to

6  either or both make recommendations for action or take immediate action themselves. In doing so,

7  Clinical Research Associates have the authority to interpret and apply policies and procedures without

8  prior approval and take actions that bind Defendant on matters of significance within the study context.

9  Further, there is no active supervision of these positions, which are performed remotely. As such,

10  Clinical Research Associates must investigate, resolve, and plan matters of significance on behalf of

11  management when they are out in the field. Finally, the work that Clinical Research Associates perform

12  requires advanced knowledge in the field of medicine, pharmacology and life sciences.  These

13  employees receive extensive academic training given the technical and complex nature of their work.

14  The performance of these duties will vary from position to position and among the various CRA levels

15  and individually among those holding the position, depending upon a number of factors including but

16  not limited to the location of the study to which the CRA is assigned, the frequency of on-site visits to

17  the site location(s), the nature of the study (or studies) to which the CRA is assigned, the stage of the

18  study, the number of additional CMA or CRA positions assigned to the study, the experience,

19  inclination, and work ethic of the CRA, complications, demands, or challenges unique to the study, and

20  sponsor requirements unite to the study.  In addition, Clinical Research Associates are assigned studies

21  of increasing complexity and more challenging therapeutic areas, commensurate with the CRA's level

22  (e.g. CRA I, CRA II, Senior CRA).  The failure to perform the reasonably expected duties of the

23  position, as in Schoulee Cones' case, does not permit an employee to avoid the exemption.

24      Clinical Monitoring Associates, including Plaintiff Dexter Pasis, spend and spent the majority of

25  their time performing a scope of various duties remotely, away from the sponsor site, including but not

26  limited to managing study sites, planning and strategically managing the path toward site qualification,

27  mentoring and training new CMAs, using judgment to assess and ensure overall integrity of study

28  implementation, ascertaining and recommending appropriate follow-up responses to issues at clinical

101

1  sites, establishing relationships with staff at study sites, maintaining a positive work environment,

2  building partnerships, communicating with team members, managing sites and protocols independently,

3  supporting less experienced staff on assignment, detection of fraudulent reporting, escalation and

4  suggested resolution of site non-compliance, advice on patient recruiting plans, identification of trends

5  of non-compliance, recognition of areas of needed retraining, and other functions that require judgment

6  and discretion at every step. In doing so, Clinical Monitoring Associates have the authority to interpret

7  and apply policies and procedures without prior approval and take actions that bind Defendant on

8  matters of significance within the study context.  As such, Clinical Monitoring Associates must

9  investigate and resolve matters of significance on behalf of management.

10      Finally, the work that Clinical Monitoring Associates perform requires advanced knowledge in

11  the field of medicine, pharmacology and life sciences.  These employees receive extensive academic

12  training given the technical and complex nature of their work.  The performance of these duties will vary

13  from position to position and among the various CMA levels and individually among those holding the

14  position, depending upon a number of factors including but not limited to the location of the study to

15  which the CMA is assigned, the nature of the study (or studies) to which the CMA is assigned, the stage

16  of the study, the number of additional CMA or CRA positions assigned to the study, the experience,

17  inclination, and work ethic of the CMA, complications, demands, or challenges unique to the study, and

18  sponsor requirements unite to the study.  In addition, Clinical Monitoring Associates are assigned

19  studies of increasing complexity and more challenging therapeutic areas, commensurate with the CMA's

20  level (e.g. CMA I, CMA II, Senior CMA).

21      (c) Schoulee Cones, Plaintiff; Dexter Pasis, Plaintiff; Alison Moyer, Manager; Cynthia Vibar,

22  Manager; Jamie Langley, Training Business Partner; Karen Chu, Head of Global Clinical Operations;

23  Meaghan Marnell, Clinical Trial Operations Associate Director.

24      (d) Plaintiff Dexter Pasis and Schoulee Cones' personnel file, documents regarding Dexter Pasis

25  and Schoulee Cones' performance of their duties, job descriptions, job duties, job requirements, and

26  documents produced in Defendant's Response to Plaintiff's Request for Production of Documents.

27      (e)  Defendant refers to documents produced in Defendant's Response to Plaintiff's Request for

28  Production of Documents.

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

**INTERROGATORY NO. 22:**

Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," or a "Senior Clinical Research Associate" within the State of California by Parexel International, LLC during the time period from December 22, 2012 through and including the date of YOUR response received all of their MEAL PERIODS? If your answer is "yes," (a) set forth the name, ADDRESS, telephone number, email address, job title and position, employment ADDRESS, and dates of employment of each such person identified; (b) set forth all facts upon which YOU base YOUR response; (c) set forth the name, ADDRESS, telephone number, email address, job title, employer, and ) employment ADDRESS of each PERSON who has knowledge of those facts; (d) ) IDENTIFY each DOCUMENT that supports YOUR response; and (e) set forth the name, ADDRESS, telephone number, email address, job title, employer, and employment ADDRESS of each CUSTODIAN who has possession of each DOCUMENT that supports YOUR response.

**RESPONSE TO NO. 22:**

Defendant objects to this request on the grounds that it is vague and ambiguous as to the enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

A party may not evade the limit of 25 interrogatories by propounding interrogatories with distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories. Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

103

1  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

2  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

3  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

4  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

5  (finding interrogatories asking for a "single piece of information" about *all products identified in*

6  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

7  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

8  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

9  Documents that You contend support each of your Affirmative Defenses, and all Persons with

10  knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

11  where Defendant pled multiple affirmative defenses).

12       Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

13  interrogatory seeking contentions as to each and every putative class members is overbroad and

14  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

15  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

16  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

17  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

18  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

19  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

20  radically varies.

21       Defendant further objects to this contention interrogatory on the ground that it is premature, as

22  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

23  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

24  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

25  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

26  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

27  *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

28  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

104

1   discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

2   *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

3   *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

4   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

5   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

6   interrogatories where substantial discovery had not been completed.)

7         Defendant further objects to the interrogatory to the extent it seeks information protected from

8   disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

9   Defendant further objects to this interrogatory to the extent it seeks information protected by the

10  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

11  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

12  preparation of a compilation or summary.

13  **SUPPLEMENTAL RESPONSE TO NO. 22:**

14        Defendant objects to this request on the grounds that it is vague and ambiguous as to the

15  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

16  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

17  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Plaintiffs have

18  subsequently amended this request to also include the Senior Clinical Monitoring Associate position, and to

19  clarify that the Clinical Monitoring Associate position refers to Clinical Monitoring Associate I. Defendant

20  also objects on the ground that this interrogatory is compound, and contains multiple, distinct, and

21  impermissibly numerous subparts. Specifically, the request (as Defendant interprets the request) seeks

22  five categories of contentions, information and documents regarding *five* separate positions enumerated

23  by Plaintiff.

24         A party may not evade the limit of 25 interrogatories by propounding interrogatories with

25  distinct subparts. *See, e.g., Hasan v. Johnson* , 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

26  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

27  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

28  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

2    to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

3    WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

4    facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

5    requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

6    (finding interrogatories asking for a "single piece of information" about *all products identified in*

7    *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

8    *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

9    sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

10   Documents that You contend support each of your Affirmative Defenses, and all Persons with

11   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

12   where Defendant pled multiple affirmative defenses).

13   Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

14   interrogatory seeking contentions as to each and every putative class members is overbroad and

15   premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

16   showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

17   persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

18   (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

19   contravene Rule 26's proportionality requirement.  This is particularly the case where the work

20   experiences, job assignments, and time spent on various duties between even the named Plaintiffs

21   radically varies.

22   Defendant further objects to this contention interrogatory on the ground that it is premature, as

23   discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

24   investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

25   2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

26   receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

27   contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

28   *In re eBay Seller Antitrust Litig.*,  C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

1  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

2  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

3  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

4  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

5  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

6  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

7  interrogatories where substantial discovery had not been completed.)

8       Defendant further objects to the interrogatory to the extent it seeks information protected from

9  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

10  Defendant further objects to this interrogatory to the extent it seeks information protected by the

11  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

12  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

13  preparation of a compilation or summary.

14       Subject to the foregoing objections, Defendant answers as follows: Yes. While there is no

15  requirement to do so for exempt employees, PAREXEL International LLC has nonetheless authorized

16  meal and rest breaks for all CRA and CMA positions. Defendant refers Plaintiff to documents produced

17  in response to Plaintiffs Requests for Production of Documents, including the Meal and Rest Period

18  Policy.  In addition, the positions are largely unsupervised, and while the individual practices of

19  employees may vary as to when and how they elect to take provided meal and rest breaks, employees

20  are free to take meal and rest periods as appropriate at their discretion.

21  **INTERROGATORY NO. 23:**

22       Do YOU contend that any person employed as a Clinical Research Associate (CRA) in the

23  positions of a "Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring Associate (In-

24  House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a "Clinical

25  Research Associate II," or a "Senior Clinical Research Associate" within the State of California by

26  Parexel International, LLC during the time period from December 22, 2012 through and including the

27  date of YOUR response received all of their REST PERIODS? If your answer is "yes," (a) set forth the

28  name, ADDRESS, telephone number, email address, job title and position, employment ADDRESS, and

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1  dates of employment of each such person identified; (b) set forth all facts upon which YOU base YOUR

2  response; (c) set forth the name, ADDRESS, telephone number, email address, job title, employer, and

3  employment ADDRESS of each PERSON who has knowledge of those facts; (d) IDENTIFY each

4  DOCUMENT that supports YOUR response; and (e) set forth the name, ADDRESS, telephone number,

5  email address, job title, employer, and employment ADDRESS of each CUSTODIAN who has

6  possession of each DOCUMENT that supports YOUR response.

7  **RESPONSE TO NO. 23:**

8        Defendant objects to this request on the grounds that it is vague and ambiguous as to the

9  enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

10  Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

11  "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

12  the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

13  numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

14  of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

15        A party may not evade the limit of 25 interrogatories by propounding interrogatories with

16  distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

17  (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

18  worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

19  Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

20  Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

21  to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

22  WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

23  facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

24  requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

25  (finding interrogatories asking for a "single piece of information" about *all products identified in*

26  *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

27  *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

28  sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

1    Documents that You contend support each of your Affirmative Defenses, and all Persons with

2    knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

3    where Defendant pled multiple affirmative defenses).

4        Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

5    interrogatory seeking contentions as to each and every putative class members is overbroad and

6    premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

7    showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

8    persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

9    (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

10   contravene Rule 26's proportionality requirement.  This is particularly the case where the work

11   experiences, job assignments, and time spent on various duties between even the named Plaintiffs

12   radically varies.

13       Defendant further objects to this contention interrogatory on the ground that it is premature, as

14   discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

15   investigation is ongoing.  *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

16   2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

17   receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

18   contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

19   *In re eBay Seller Antitrust Litig.*, C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

20   ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

21   discovery is undertaken.  In fact, courts tend to deny contention interrogatories f*iled before substantial*

22   *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

23   *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

24   plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

25   litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

26   interrogatories where substantial discovery had not been completed.)

27       Defendant further objects to the interrogatory to the extent it seeks information protected from

28   disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES
42131569v.2

1    Defendant further objects to this interrogatory to the extent it seeks information protected by the

2    attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

3    Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

4    preparation of a compilation or summary.

5    **SUPPLEMENTAL RESPONSE TO NO. 23**

6           Defendant objects to this request on the grounds that it is vague and ambiguous as to the

7    enumerated positions ""Clinical Monitoring Associate (In-House CRA),"a "Clinical Monitoring

8    Associate (In-House CRA) II," a "Clinical Research Associate," a "Clinical Research Associate I," a

9    "Clinical Research Associate II," and a "Senior Clinical Research Associate."  Defendant also objects on

10   the ground that this interrogatory is compound, and contains multiple, distinct, and impermissibly

11   numerous subparts. Specifically, the request (as Defendant interprets the request) seeks five categories

12   of contentions, information and documents regarding *five* separate positions enumerated by Plaintiff.

13          A party may not evade the limit of 25 interrogatories by propounding interrogatories with

14   distinct subparts. *See, e.g., Hasan v. Johnson*, 2012 WL 569370 (E.D. Cal. Feb. 21, 2012)

15   (Interrogatory "contains three distinct subparts with different themes, (1) the entity where Defendant

16   worked, (2) Defendant's *duties*, and (3) Defendant's supervisor . . . Therefore, the Court finds that

17   Plaintiff's Interrogatories 1 through 8, with their discrete subparts, contain twenty-five interrogatories.

18   Therefore, since Defendant has already responded to Interrogatories Nos. 1 through 9, he is not required

19   to respond to any more of Plaintiff's Interrogatories."); *McConnell v. Pacificorp, Inc.*, No. C 07-2382

20   WHA (JL), 2008 WL 3843003 (N.D. Cal. Aug. 15, 2008) ("Accordingly, Interrogatory 3, since it seeks

21   facts, witnesses, and documents (three categories of responses) . . . should be framed as three separate

22   requests"); *Rambus Inc. v. Nvidia Corp.*, No. C-08-05500 SI, 2011 WL 11746749 (N.D. Cal. 2011)

23   (finding interrogatories asking for a "single piece of information" about *all products identified in*

24   *Complaint* exceeded and "improperly circumvent[ed]" limit on interrogatory); *AngioScore, Inc. v.*

25   *TriReme Medical, Inc.*, No. 12-cv-03393-YGR (JSC) (N.D. Cal. Dec. 16, 2014) (interrogatory that

26   sought "complete factual basis for each of the Affirmative Defenses provided in Your Answer, all

27   Documents that You contend support each of your Affirmative Defenses, and all Persons with

28   knowledge of the facts relating to each of Your Affirmative Defenses" exceeded interrogatory limits

1  where Defendant pled multiple affirmative defenses).

2  Defendant objects that the interrogatory is premature as no class has been certified.  Thus, the

3  interrogatory seeking contentions as to each and every putative class members is overbroad and

4  premature, as Plaintiffs currently represent only themselves.  Plaintiffs have not met the prima facie

5  showing of Rule 23's prerequisites or shown that such discovery measures are likely to produce

6  persuasive information substantiating the class action allegations. *Mantolete v. Bolger*, 767 F.2d 1416

7  (9th Cir. 1985). Production of class-wide information at this early stage of litigation would, accordingly,

8  contravene Rule 26's proportionality requirement.  This is particularly the case where the work

9  experiences, job assignments, and time spent on various duties between even the named Plaintiffs

10  radically varies.

11  Defendant further objects to this contention interrogatory on the ground that it is premature, as

12  discovery has just begun, neither Plaintiff, nor any other witness has been deposed, and Defendant's

13  investigation is ongoing. *See, e.g. Folz v. Union Pacific Railroad Co.*, No. 13-CV-00579-GPC - (PCL),

14  2014 WL 357929 (S.D. Cal. Jan. 31, 2014) ("Generally speaking, contention interrogatories ask the

15  receiving party to state the factual bases for its allegations . . . within the framework of Rule 33,

16  contention interrogatories need not be answered until the *substantial completion of pretrial discovery*.");

17  *In re eBay Seller Antitrust Litig.*,  C 07-1882 JF (RS), 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)

18  ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before

19  discovery is undertaken.  In fact, courts tend to deny contention interrogatories *filed before substantial*

20  *discovery has taken place*, but grant them if discovery is *almost complete*.") (emphasis added), *City &*

21  *County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that

22  plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of

23  litigation); and *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (denying contention

24  interrogatories where substantial discovery had not been completed.)

25  Defendant further objects to the interrogatory to the extent it seeks information protected from

26  disclosure by one or more individuals' constitutional, statutory, or common law right to privacy.

27  Defendant further objects to this interrogatory to the extent it seeks information protected by the

28  attorney-client privilege, the attorney-work-product doctrine, and/or other applicable privileges.

1  Defendant further objects to this Interrogatory on the grounds that the answer would necessitate the

2  preparation of a compilation or summary.

3        Subject to the foregoing objections, Defendant answers as follows: Yes. While there is no

4  requirement to do so for exempt employees, PAREXEL International LLC has nonetheless authorized

5  meal and rest breaks for all CRA and CMA positions. Defendant refers Plaintiff to documents produced

6  in response to Plaintiffs Requests for Production of Documents, including the Meal and Rest Period

7  Policy.  In addition, the positions are largely unsupervised, and while the individual practices of

8  employees may vary as to when and how they elect to take provided meal and rest breaks, employees

9  are free to take meal and rest periods as appropriate at their discretion.

10  DATED: November 6, 2017

11             Respectfully submitted,

12             SEYFARTH SHAW LLP

14             By:

15                   Diana Tabacopoulos

                 Michael W. Kopp

16            Attorneys for Defendant

          PAREXEL INTERNATIONAL CORPORATION

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES

42131569v.2

1
2
3
4
5
6
7
8
9
10
11            VERIFICATION TO FOLLOW
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' REQUESTS FOR INTERROGATORIES

42131569v.2

1

2                                    **VERIFICATION**

3          I, Meaghan Marnell, declare as follows:

4          I have read **DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST**

5   **SET OF INTERROGATORIES,** and know the contents thereof.

6          I am employed by defendant PAREXEL International LLC, a party to this action, and am

7   authorized to make this verification for and on its behalf, and I make this verification for that reason.  I

8   am informed and believe, and on that ground allege, that the matters in the above-referenced document

9   are true and accurate.

10         I am informed and believe, and on that ground allege, that the matters in the above-referenced

11  document are true and accurate.

12         I declare under penalty of perjury under the laws of the United States that the foregoing is true

13  and correct.

14         Executed on November 7, 2017, at ___6:09 PM  EST___

15

16                                    Meaghan Marnell

17

18

19

20

21

22

23

24

25

26

27

28

                                     VERIFICATION

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 400 Capital Mall, Suite 2350, Sacramento, California 95814. On November 6, 2017, I served the within document(s):

**DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at 400 Capitol Mall, Suite 2350, Sacramento, California, addressed as set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Sacramento, California, addressed as set forth below.

Patrick N. Keegan
James M. Treglio
Keegan & Baker LLP
6156 Innovation Way
Carlsbad, CA 92009

*Attorneys for Plaintiff*

T: (760) 929-9303
F: (760) 929-9260
pkeegan@keeganbaker.com

Walter Haines
The United Employees Law Group
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649

T: (310) 234-5678
F: (562) 256-1006
walter@whaines.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made. Executed on November 6, 2017 at Sacramento, California.

Jean Moore
Jean Moore

PROOF OF SERVICE

3:16-CV-03084-L-BGS

39574277v.1