Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
6156 Innovation Way
Carlsbad, CA 92009
Tel:   (760) 929-9303
Fax:   (760) 929-9260

Walter Haines, Esq. (SBN 71075)
walter@whaines.com
**THE UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Ste 201
Huntington Beach, CA 92649
Tel:   (310) 234-5678
Fax:   (562) 256-1006

Attorneys for Plaintiffs
SCHOULEE CONES and DEXTER PASIS

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCHOULEE CONES, an individual, and DEXTER PASIS, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PAREXEL INTERNATIONAL CORPORATION, a Massachusetts corporation licensed to do business in the State of California; and PAREXEL INTERNATIONAL, LLC, a Massachusetts limited liability company licensed to do business in the State of California,<br><br>Defendants. | Case No. 16-cv-3084-L-BGS<br><br>Assigned to: Hon. M. James Lorenz<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CONDITIONAL CLASS CERTIFICATION UNDER FAIR LABOR STANDARDS ACT, 29 U.S.C. § 216(b); AND FOR CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23**<br><br>Date: May 14, 2018 (continued with no new date assigned)<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# TABLE OF CONTENTS

I. THE COURT SHOULD GRANT CERTIFICATION OF THE CALIFORNIA SUB-CLASS. ... 1

    A. Plaintiffs Establish Their Adequacy and Typicality as Class Representatives. ... 1

        1. Pasis. ... 1

        2. Cones. ... 3

    B. Plaintiffs Establish that Common Questions Predominate, and Analysis of the Administrative Exemption Does Not Require Individualized Inquiries. ... 4

        1. The Conduct of CRAs and CMAs Is Governed by Standardized Corporate Policies and Procedures Susceptible to Common Proof. ... 4

    C. Proceeding on a Class Basis Is Superior and Manageable. ... 9

II. THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE FLSA CLASS. ... 10

    A. The First-Step Analysis Applies to Conditional Certification of the FLSA Class. ... 10

    B. Plaintiffs Have Made the Requisite Modest Showing. ... 10

III. DEFENDANTS' MOTION TO STRIKE PLAINTIFFS EXPERT WITNESS TESTIMONY APPLIES THE WRONG EVIDENTIARY STANDARD AND SHOULD BE DENIED. ... 11

IV. DEFENDANT'S PREVIOUSLY UNIDENTIFIED DECLARANTS SHOULD BE EXCLUDED PURSUANT TO RULE 37(C)(1) ... 13

V. CONCLUSION. ... 15

**TABLE OF AUTHORITIES**

**CASES**

*Aros v. United Rentals, Inc.*,
269 F.R.D. 176 (D. Conn. 2010)............................................. 11

*Balasanyan v. Nordstrom, Inc.*,
294 F.R.D. 550 (S.D. Cal. 2013)............................................. 1

Boyd v. Bank of Am. Corp.,
300 F.R.D. 431 (C.D. Cal. 2014).............................. 2, 4, 5, 8, 9

*Boyd. Boyd v. Bank of Am. Corp.*,
109 F.Supp.3d 1273 (C.D. Cal. 2015)...................................... 9

*Brinker Restaurant Corp. v. Sup. Ct.*
(2012) 53 Cal.4th 1004........................................................ 9

*Campbell v. Vitran Express Inc.*,
2015 WL 7176110 (C.D. Cal., Nov. 12, 2015)........................... 9

*Cholakyan v. Mercedes–Benz, USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012)............................................ 12

*Compare Jovel v. Boiron Inc.*,
2014 WL 1027874 (C.D. Cal. Feb. 27, 2014)............................ 1

*Doornbos v. Pilot Travel Centers LLC*,
2005 WL 6166032 (S.D.Cal. Apr.27, 2005)............................. 10

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)............................................. 1, 12

*Ellis v. Costco*,
285 F.R.D. 492 (N.D. Cal. 2012)........................................... 6

*Escano v. Kindred Healthcare Operating Co.*,
2013 WL 816146 (C.D. Cal. Mar. 5, 2013)............................... 6

*Faulkinbury v. Boyd & Associates, Inc.*
(2013) 216 Cal.App.4th 220................................................. 9

*Guzman v. Bridgepoint Educ., Inc.*,
305 F.R.D. 594 (S.D. Cal. 2015)........................................... 14

*Harris v. Vector Mktg. Corp.*,
753 F.Supp.2d 996 (N.D. Cal. 2010)................................... 2, 3

*Hatamian v. Advanced Micro Dev., Inc.*,
2016 WL 1042502 (N.D.Cal., Mar. 16, 2016).......................... 12

*Hernandez v. Arctic Glacier, USA, Inc.*,
2017 WL 1155346 (S.D. Cal. Mar. 28, 2017).......................... 10

Reply Memorandum in Support of Motion for
Conditional Certification and Rule 23 Class Certification    iii    Case No. 16-cv-3084-L-BGS

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996).................................................. 9

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
2008 WL 413749 (N.D. Cal. Feb. 13, 2008).................................. 1

*Keshishzadeh v. Arthur J. Gallagher Serv. Co.*,
2010 WL 11509305 (S.D. Cal. Apr. 16, 2010)................................ 8

*Kriendler v. Chem. Waste Mgmt., Inc.*,
877 F.Supp.1140 (N.D. Ill. 1995).............................................. 3

*Krzesniak v. Cendant Corp.*,
2007 WL 1795703 (N.D. Cal. June 20, 2007)................................. 9

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013)................................................... 12

*Marlo v. United Parcel Service*,
639 F.3d 942 (9th Cir. 2011)................................................... 7

*McLaughlin v. Ho Fat Seto*,
850 F.2d 586 (9th Cir. 1988)................................................... 10

*Misra v. Decision One Mortg. Co., LLC*,
673 F.Supp.2d 987 (C.D. Cal. 2008).......................................... 10

*Rai v. Santa Clara Valley Transportation Authority*,
308 F.R.D. 245 (C.D.Cal. 2015)................................................ 12

*Sealock v. Covance, Inc.*,
2018 WL 2290698 (S.D.N.Y. May 18, 2018)................................ 11

*Soto v. Diakon Logistics (Delaware), Inc.*,
2013 WL 4500693 (S.D. Cal. Aug. 21, 2013).............................. 6, 9

*Spann v. J.C.Penny Corp.*,
307 F.R.D. 508 (C.D.Cal. May 18, 2015)..................................... 12

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D.Cal.2012)................................................. 12

*Tapia v. Zale Delaware Inc.*,
2016 WL 1385181 (S.D. Cal. Apr. 6, 2016)................................... 8

*Trinh v. JP Morgan Chase & Co.*,
2008 WL 1860161 (S.D. Cal.Apr. 22, 2008)................................. 11

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)........................................................... 13

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009)................................................... 8

## I. THE COURT SHOULD GRANT CERTIFICATION OF THE CALIFORNIA SUB-CLASS

### A. Plaintiffs Establish Their Adequacy and Typicality as Class Representatives

Adequacy is not a ground to deny certification. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 WL 413749, at *12 (N.D. Cal. Feb. 13, 2008) ("It is well settled that . . . even a single plaintiff may represent the entire class, no matter how small his or her claim may be".) "Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011). Plaintiffs' Schoulee Cones ("Cones") and Dexter Pasis' ("Pasis") (collectively, "Plaintiffs") theory of liability and Cones' and Pasis' personal narrative fall within the common contours of other California sub-class members' claims (Weaver, Kenneweg, and O'Gorden). (ECF 83-7:Cones Dec., ¶¶3-6 and Exs. U-V; ECF 83-8:Pasis Dec., ¶¶3-16 and Ex. T; ECF 96-17, Ex. Q:Weaver Dec., ¶¶2-17; ECF 96-18, Ex. R: Kenneweg Dec., ¶¶2-18; and ECF 96-19, Ex. S:O'Gorden Dec., ¶¶2-18). PAREXEL's arguments against the adequacy and typicality of the named Plaintiffs are meritless.

### 1. Pasis

Defendants argue that Pasis cannot represent the class because he purportedly lacks credibility. Defendants show no conflict between Pasis and any class members. Unlike cases in which a court has found a class representative inadequate due to inconsistent deposition testimony *on an issue directly relevant to the litigation*, Defendants' allegations about Pasis are irrelevant to the claims here.[1] While failing to acknowledge Pasis'

---

[1] *Compare Jovel v. Boiron Inc.*, 2014 WL 1027874, at *2 (C.D. Cal. Feb. 27, 2014) (credibility affected adequacy in false advertising case because in his complaint he alleged "that he read Oscillo's label prior to purchasing the product" but at his deposition he testified that "he did not in fact read Oscillo's label until after he purchased the product") *with Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 563 (S.D. Cal. 2013) (refusing to disqualify wage and hour class representative who disputed the allegation that he lied about his commissions, because "[w]here credibility has been considered, courts have generally found inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty,

numerous awards and compliments he received for his work at PAREXEL, (ECF 96-83:Ex. 241; and ECF 96-27:Ex. AA:Vibar Depo. 140:24-142:23), Defendants point to a $7,000 error on a job application he submitted to his current employer (following his ***resignation*** from PAREXEL) and question his credibility.  Pasis' subsequent math error on a job application submitted to his current employer is irrelevant (and inadmissible at trial), and while he disputes PAREXEL's characterization of his testimony and math error, such argument does not demonstrate that he is inadequate or atypical. *See Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 438–39 (C.D. Cal. 2014) ("LandSafe's allegations are essentially that Mr. Boyd was not a good and honest employee. This does not make him inadequate for the purposes of class certification.")

Moreover, this case will not turn on Pasis' recollection or credibility (or any other class members' recollection or credibility) of what duties they performed.  In addition to the highly standardized corporate policies and procedures (i.e. SOPs [ECF 92 Exs. C to P], job descriptions [ECF 96-48 to 96-53], and Clinical Operations Employee Guidelines [ECF 92:Ex. 47]), Defendants produced a (redacted) report (ECF 96-84: Ex. 242) setting forth ***every one*** of Mr. Pasis' ***remote site visits***, i.e. reflecting ***all of his "remote site management contacts"*** he performed throughout his entire employment, which was prepared by Ms. Vibar using PAREXEL's computer systems. (ECF 96-27: Ex. AA:Vibar Depo. 152:5-156:9; 159:2-15).  Ms. Vibar further testified that Exhibit 242 reflects the ***type of remote site visits*** that CMAs and CRAs performed, and such a report could be generated for all CRAs and CMAs. (*Id*. Vibar Depo. 156:10-158:8). Such evidence therefore also negates Defendants' argument that consideration of the duties CRAs and CMAs performed in regards to litigation of the administrative exemption defense will create individualized issues. *See*, *e.g.*, *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442–43

---

such as a criminal conviction for fraud"); *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) (refusing to disqualify class representative who lied about matters not directly related to claims asserted).

(C.D. Cal. 2014).[2]

### 2. Cones

Defendants do not challenge the adequacy of Plaintiffs' counsel, nor the vigor with which counsel and Cones have pursued this case. Yet, Defendants argue that Cones cannot represent the class because she purportedly "lack[s] honesty and is an "inadequate" class representative, because of unrelated and irrelevant state court criminal proceedings held ***more than twenty (20) years ago*** involving a 1993 and a 1995 drug possession charges and pleas of no contest/guilty. To have any influence over the Court's adequacy analysis, criminal history must be directly relevant to the litigation. *Harris v. Vector Mktg.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010). Here, there is absolutely no connection or any inferences whatsoever that can be drawn from Cones' 20 year old criminal history and the issues regarding her 2014 employment with PAREXEL that are at stake in this case.[3]

Like Pasis, this case will not turn on Cones' recollection or credibility (or any other class members' recollection or credibility) of what duties they performed. Defendants ignore and fail to discuss the (redacted) exemplars of ***all four types*** of ***on-site visit reports that were completed by other class members during the Class Period***: (i) On-Site Qualification visit report (ECF 92: Ex. 244); (ii) On-Site Initiation visit report (ECF 92: Ex. 243); (iii) On-Site Monitoring visit report (ECF 92:Ex. 245); and (iv) On-Site Termination

---

[2] Additionally, Defendant argues that "Pasis testified that the multiple resumes he submitted to employers accurately reflected his job duties, but his declaration denies he ever used independent judgment" arguing that his use of the word "judgment" to describe his CMA duties is somehow contradictory. Defendants' conflate use of word "judgment" with the legal test of what constitutes the "exercise discretion and independent judgment with regards to matters of significance" and cite no authority for its mis-interpretation.

[3] Second, Defendants attack Cones' adequacy based on her ***previous health issues***, but concedes that she testified that her current health presents no obstacle to litigating this case. Inquiry into adequacy should not involve an examination of a class representative's medical history. *See Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F.Supp.1140, 1159 (N.D. Ill. 1995); (ECF 111, pp. 6-13). Defendants' *ad hominem* attack does not demonstrate that Cones would be an adequate class representative.

Visit report (ECF 92:Ex. 246).  (ECF 96-27: Ex. AA:Vibar Depo. 161:22-162:16; 170:15-171:10; 171:20-172:15; 172:25-173:16). Even a cursory review of such exemplars demonstrates that CRAs' performance of their duties at **on-site visits** merely entails filling out *checkbox forms* regarding the data that they are told to review, using checklists and answering (y/n) questions provided to them.  Such evidence therefore also negates Defendants argument that consideration of the duties CRAs and CMAs performed in regards to litigation of the administrative exemption defense will create individualized issues.

**B.  Plaintiffs Establish that Common Questions Predominate, and Analysis of the Administrative Exemption Does Not Require Individualized Inquiries**

While Defendants make much of the fact that Plaintiffs had "access to 215 California CRAs and CMAs," (abet only for one month, from March 9, 2018 to April 9, 2018 [ECF 75]), and that Plaintiffs "provide only *three*" additional CRA declarations, Defendants however have  produced *only one* California Sub-Class member declaration in response to Plaintiffs' motion. ***Only one***, Marnina Appiah, is listed on the California-Sub Class contact list of "215 California CRAs and CMAs" that was produced to Plaintiffs on March 9, 2018 (which as corroborated by the out-of-state locations where their other declarations are signed). Therefore, by Defendants' own argument, Plaintiffs' *five* declarations (Plaintiffs and 3 others [ECF 96-17:Ex. Q:Weaver Dec.; 96-18:Ex. R: Kenneweg Dec.; and 96-19:Ex. S: O'Gorden Dec.]) *compared to* Defendants' *one* declaration presents stronger evidence that CRAs and CMAs perform the same uniform job duties.

**1.  The Conduct of CRAs and CMAs Is Governed by Standardized Corporate Policies and Procedures Susceptible to Common Proof**

*Boyd*, 300 F.R.D. at 442, found that predominance was demonstrated by the fact that, like here, class members' conduct "is regulated by several corporate policies and procedures." *Boyd* specifically identified the following facts by which the employer exercised some level of centralized control in the form of standardized corporate policies and procedures governing employees conduct susceptible to common proof:

(1) "the job descriptions" were "standardized nationwide;"

> (2) class members "receive their assignments through the same computer program," and "they may not "pick and choose" those assignments.
> (3) "standardized compensation policies that apply to all"
> (4) "most significantly, LandSafe promulgated several detailed guidelines to direct the conduct of Residential Appraisers. [Citations omitted.] For example, one 50–page guideline details different sets of procedures for different types of properties (e.g. condominiums, cooperatives, leasehold estates, manufactured homes, modular homes, mixed-use homes, rural homes), and specifies requirements ... [and] that these policies are uniform nationwide and are 'not an optional thing.'"[4]

Similarly facts by which PAREXEL exercised control over CRAs and CMAs are present here:

> (1) the CRA and CMA job descriptions were standardized nationwide, (*See, e.g.* ECF 96-48 to 96-53);
> (2) class members receive their assignments from their line managers (LM) through the same computer program. (*See, e.g.,* ECF 96-2:Ex. B at Response No. 7; ECF 96-27 at 154:21-155:3; ECF No. 96-26at 21:22-25, 22:15-22).
> (3) Defendants admit that PAREXEL classifies the CMA and CRA positions as exempt, and Plaintiffs and other CRAs and CMAs were classified as exempt and paid on a salary basis. (*See, e.g.,* Answer ¶¶29[5]; 57[ECF 29]).
> (4) FDA regulations, ICH guidelines, Good Clinic Practices (GCP) and Standard Operating Procedures (SOP) govern visits at assigned clinic study sites. (*Id.*, ¶26). PAREXEL operating procedures, guidelines, and GCP apply. (*Id.*, ¶31). It is a requirement that these regulations, guidelines, and procedures be followed. (*Id.*, ¶26). Clinical Operations Expectations and Guidelines (ECF 92:Ex. 42 at PAR000245-246) and SOPs (ECF 92:Exs. C-P) and Monitoring Plans (ECF 92:Ex. 45) set for specific requirements for CRA/CMA that must be followed. (*See also*, ECF 96-1, Ex. A, RFA No. 20, at pp. 24-25 of 45).

CRAs and CMAs perform monitoring visit tasks for four types of monitoring visits (qualification, initiation, maintenance, and termination). Each monitoring visit type has written SOPs which identify the duties of the CRAs and CMAs. In addition, each type of monitoring visit has written monitoring tools and checklist developed by the Clinical Operations Lead (COL). For example, the following SOPs set forth the duties and

---

[4] *Boyd*, 300 F.R.D. at 443, also found the fact that, like here, class members' conduct "is regulated by state and federal law" demonstrated predominance. Likewise here, the duties of CRAs and CMAs are subject to agreements between Sponsors (pharmaceutical companies) and PARAEXEL setting forth standard operating procedures (i.e. SOPs) as required by federal law (21 CRF 312.50, 312.52) and industry standards (ICH GCP § 5.18.4) and PAREXEL is required by industry standards (ICH GCP § 5.18.6) to insure that its CRAs and CMAs prepare reports standardize reports after all of their site visits.

[5] Hereinafter, all ¶ references are to the Defendants' Answer (ECF 29).

responsibilities of CRAs and CMAs:

> According to PAREXEL's SOPs, CRAs and CMAs have the same duties and responsibility for all four visit types (CMAs perform all of their administrative clerical duties remotely (over the phone/do not travel), and CRAs perform these duties both in office and traveling to a site (on-site)).  E.g., under SOP-CLN-WW-002-03: **Site Qualification** (ECF 92:Ex. C at PAR000572; PAR000577; PAR000582; PAR000582 & PAR000585); under SOP-CLN-WW-004-02: **Site Initiation** (ECF 92:Ex. D at PAR000619; PAR000622; & PAR000626); under SOP-CLN-WW-006-02.a: **Site Management** (ECF 92:Ex. F at PAR000698; PAR000707; PAR000710; PAR000721; PAR000723; PAR000729; & PAR000732); and under SOP-CLN-WW-010-03: **Site Termination** (ECF 92:Ex. H at PAR000851; PAR000857; PAR000858; PAR000859; & PAR000860).

> According to all four site visit SOPs (ECF 92:Ex. C, D, F and H), CRAs and CMAs are required to use PAREXEL's associated documents (Forms (FMs), Templates (TPs), and Checklists (CKLs)) or Sponsor /site equivalents. Such requirements are mandatory and must be followed.

> According to **Site Qualification, Site Initiation**, and **Site Management** SOPs (ECF 92:Ex. C at PAR000585; ECF 92:Ex. D at PAR000624 & ECF 92:Ex. F at PAR000713), CRAs and CMAs do not make decisions about protocol deviations, and merely escalate concerns to the COL.

> According to **Site Qualification, Site Initiation**, and **Site Management** SOPs (ECF 92:Ex. C at PAR000585; ECF 92:Ex. D at PAR000624 & ECF 92:Ex. F at PAR000713), CRAs do not make determination about what sites should be selected as potential candidates for a potential study.  Decisions on site selection are made by Clinical Feasibility Leader (CFL) and COL.

> CRAs primary responsibility is to perform Source Document Review (SDR) and Source Data Verification (SDV) against paper notes, electronic health record (EHR) printouts or directly from electronic records system. (SOP-CLN-WW-006-02.a: **Site Management** [ECF 92Ex. F at PAR000689]).

This common evidence shows that all CRAs and CMAs perform the same job duties. Under Rule 23, they need not have performed their duties in an identical manner. *See Ellis v. Costco*, 285 F.R.D. 492, 517 n.16 (N.D. Cal. 2012).[6] Defendants cannot defeat certification by arguing, contrary to the common evidence, that CRAs and CMAs

---

[6] See, *Escano v. Kindred Healthcare Operating Co.*, 2013 WL 816146, at *4 (C.D. Cal. Mar. 5, 2013) (evidence that defendant's policy and practice that misclassification was the rule rather than the exception demonstrates predominance of common claims). *Soto v. Diakon Logistics (Delaware), Inc.*, 2013 WL 4500693, at *7 (S.D. Cal. Aug. 21, 2013) (J. Lorenz) (in such cases as this, "[f]ederal courts have recognized that individual issues will likely be present during class actions, but that such issues should not prevent class certification so long as they do not override the common question.")

"performed" their uniform duties differently.[7] Defendants' arguments illustrate that common issues predominate. Their arguments boiled down only to whether the nature of the job duties that all CRAs and CMAs performed require the requisite exercising discretion and independent judgment necessary to prove the administrative exemption. In making arguments about the judgment exercised by CRAs and CMAs, Defendants at the same time argue that *all* CRAs and CMAs are informally exempt based on the nature of their duties, *not* that *some* are exempt and *others* are not.

Further, unlike the cases cited by Defendants, CRAs' and CMAs' job duties do not prevent classwide analysis. Unlike here were there is no evidence of variations in how CRAs and CMAs are to conduct their site monitoring job duties (e.g., SOPs [ECF 92:Exs. C, D, F, and H]), *Marlo v. United Parcel Service*, 639 F.3d 942 (9th Cir. 2011) found variations where employees worked "under different managers." *Id.* at 949. Unlike here where all of the CRAs and CMAs job duties are set forth in uniform policies and SOPs and

---

[7] While Plaintiffs seek to strike all of PAREXEL's proffered current employee declarations, none support denial of class certification. Just like Plaintiffs' putative class member declarants, (ECF96-17 to 96-19), they do not dispute that they conducted the same four types of on-site visits or that performance of their uniform duties set forth in SOPs and Monitoring Plans or they fill out visit report forms. Because all CRA and CMA primary duties are the same, whether those duties fit the administrative exemption can be resolved on a classwide basis. Instead, PAREXEL declarants' recollections of how they performed these duties overinflate how CRAs and CMAs perform those duties in an attempt to raise individual issues (however, whether such recollections are correct can be tested by their contemporaneously recorded site visit reports [(ECF 92:Exs. 243-246]) in an attempt to raise individual issues. A review of the applicable SOPs belies such outlandish claims. For example, CRAs do not actively evaluate for trends as that task falls to the COL as part of ongoing project oversight review report or relevant Business Intelligence Reports as outlined in MAN-CLN-WW-004:Evaluate trends in types of issues. (Site Management SOP [ECF 92:Ex. F at PAR000731). The Project Lead (PL) reviews site data entry on an ongoing basis for trends and they work with the Project Team members if trends are seen (Protocol Deviation Management SOP **[**ECF 92:Ex M, at PAR003038]). Additionally, there is an entire data and medical team outside of site management that reviews site data entry for trends and protocol deviations (PD). (Protocol Deviations Management and Reporting SOP, "Tools used for PD Management" (ECF 92:Ex. N at PAR003083).

work can be analyzed by a review of the recorded checkbox, site visit report forms, (ECF 92:Exs. 243-246), "Countrywide had no common scheme or policy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009).

Here, in contrast to *Marlo* and *Vinole*, it cannot be seriously disputed what job duties CRAs and CMAs perform; or how CRAs and CMAs spent their time performing their job duties (by performing remote visits and one of four types of on-site visits, using checklists and guidance documents, and when completed, prepare filling out ***checkbox forms*** regarding the data that they are told to review, using checklists and answering (y/n) questions provided to them), ***because all of their time is recorded and all of their site visit reports are recorded on PAREXEL's computer systems***. "Here, the question isn't what [CRAs and CMAs] actually do or how they spend the bulk of their time, but how to describe or categorize what they do do. This is a question, as the court in *Jimenez* recognized, that can be resolved on a class-wide basis." *Keshishzadeh v. Arthur J. Gallagher Serv. Co.*, 2010 WL 11509305, at *8–9 (S.D. Cal. Apr. 16, 2010).[8]

---

[8] With respect to Plaintiffs' meal and rest breaks claims, Plaintiffs' submitted evidence that PAREXEL's meal/rest policy (Ex. 46) did not conform to the applicable laws and wage orders, like in *Boyd*. *Boyd*, 300 F.R.D. at 441; see also, *Tapia v. Zale Delaware Inc.*, 2016 WL 1385181, at *6-8 (S.D. Cal. Apr. 6, 2016) ("class certification is appropriate on her claim that Defendant's written policy violates the law governing the timing of the first meal period."). Specifically, PAREXEL's Clinical Operations Employee Guidelines, (which is the ***only meal/rest policy*** that all CRAs and CMAs were required read and sign [Ex. 46, ECF 92, at p. 41 of 41 (PAR000242); ECF 96-24, Ex. X:Marnell Depo. 203:3-25]), sets forth the meal/rest policy that applied to CRAs and CMAs during the Class Period, after giving the example of an "11 hour" workday, by providing "All employees are eligible for up to one hour of an unpaid lunch break; this time should not be recorded on your timesheet." and that only "Non-exempt employees within Clinical Operations are eligible for two paid 10 -minute breaks during the course of the 8 -hour workday," without stating when such meal or rest breaks should be taken. (Ex. 46, ECF 92, at p.12 of 41 [PAR000215]). In response, Defendants' offer a ***single*** California Sub-Class declarant who does not contradict Defendants' un-lawful California meal/rest break policy, but instead asserts that she sets her own schedule, so she can take breaks if she wanted. (Marnina Appiah, ¶23). Defendant's argument essentially asks the Court to impermissibly weigh fact evidence. *Id.* at *8. This does not change the common question: whether

### C. Proceeding on a Class Basis Is Superior and Manageable

By arguing that "[i]ndividual claims here are potentially significant," Defendants contend that the size of potential individual recoveries overwhelms the advantage of class prosecution. However, "the possibility of a potential recovery for each class member larger than a nominal sum does not militate against the maintenance of such an action." *Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *19 (N.D. Cal. June 20, 2007) (quotation omitted) (rejecting argument in misclassification case that possibility of large recoveries "vitiates the superiority of class treatment"); and *Boyd*, 300 F.R.D. at 444 (same). In *Soto*, this Court rejected the nearly identical argument that "Plaintiffs have sufficient economic incentive to bring their own claims because the damages for one of Plaintiffs' claims exceeds $50,000." *Soto*, 2013 WL 4500693, at *7. Likewise, Defendants' argument similarly made here should be rejected since it also does not demonstrate that the Rule 23(b)(3) factors weigh against finding superiority.

After completion of discovery, Plaintiffs believe that liability in this action could eventually be resolved in their favor by a motion for summary judgment, like in *Boyd*. *Boyd v. Bank of Am. Corp.*, 109 F.Supp.3d 1273, 1292-1297 (C.D. Cal. 2015). But if the determination of liability issues proceed to a jury trial, Plaintiffs need not question each and every class member, as representational testimony is a fully acceptable method of establishing proof, making class treatment manageable. *Hilao v. Estate of Marcos*, 103

---

Defendants' meal/rest policy is a class-wide violation of Cal. Labor Code § 226.7. Thus, Defendants' ***one*** declaration fails to establish that individualized issues will predominate the litigation of the meal/rest break claims. See, *Campbell v. Vitran Express Inc.*, 2015 WL 7176110, at *9 (C.D. Cal., Nov. 12, 2015) ("Liability does not hinge on the individual conduct of the employees, but on the existence of a uniform policy to deny meal and rest periods."); and *Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 232 ("*Brinker* teaches that we must focus on the policy itself and address the issue whether the legality of the policy can be resolved on a classwide basis.") As *Brinker* states, "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1033.

F.3d 767, 786 (9th Cir. 1996); and *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir.1988) ("hold[ing] that the *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees" where 5 out of 28 employees testified). This Court can manage this class action.

## II. THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE FLSA CLASS

### A. The First-Step Analysis Applies to Conditional Certification of the FLSA Class

It cannot be seriously disputed that discovery is continuing and has ***not closed***. (See, e.g., ECF 100, 108 and 116). As this Court has held under similar circumstances, "[t]he second step occurs <u>after the close of discovery</u> but before trial. ... Here, [Plaintiffs'] motion concerns only the first step." *Hernandez v. Arctic Glacier, USA, Inc.*, No. 3:15-CV-01938-L-JMA, 2017 WL 1155346, at *1 (S.D. Cal. Mar. 28, 2017) (J. Lorenz) (*citing Leuthold*, 224 F.R.D. at 466 and distinguishing *Pfohl v. Farmers Ins. Group*, 2004 WL 554834 at *2–3 (C.D. Cal. 2004)); *see Misra v. Decision One Mortg. Co., LLC*, 673 F.Supp.2d 987, 993 (C.D. Cal. 2008) (same).[9]

### B. Plaintiffs Have Made the Requisite Modest Showing

While Defendants' admissions in their Answer to the SAC and PAREXEL's last Form 10-K arguably alone meet the requisite modest threshold, (ECF 83-1, at 3:13-6:15), Plaintiffs' evidence goes above and beyond by providing more than "some factual evidence [] demonstrating that she and other potential plaintiffs together were victims of a single, common decision, policy, or plan." *Hernandez*, 2017 WL 1155346, at *2. (*E.g*, Keegan Reply Dec., ¶3; and Index of Plaintiffs' Evidence). Furthermore, on <u>May 18, 2018</u>, a court has likewise recently ordered conditional certification of a multi-state class of CRAs,

---

[9] The question of whether PAREXEL violated the FLSA is equally not considered at the second-stage analysis. *Doornbos v. Pilot Travel Centers LLC*, 2005 WL 6166032, at *6 (S.D.Cal. Apr.27, 2005) ("A determination of whether [defendant's] policy violated the law ... is not an issue properly considered on a motion to decertify.")

*Sealock v. Covance, Inc.*, 2018 WL 2290698, at *2 (S.D.N.Y. May 18, 2018) (J. Furman), and numerous other courts have ordered conditional certification of collective actions involving administrative exemptions. *See, e.g., Boyd*, 2013 WL 6536751, at *2. Respectfully, conditional certification of the FLSA Class is also appropriate.

Cases cited by Defendants in which conditional certification was denied are all readily distinguishable. For example, in *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *3-4 (S.D. Cal.Apr. 22, 2008), the loan officer plaintiffs "provide[d] no real evidence, beyond their own speculation, suggesting that loan officers across the country ... receive the same compensation and are required to work in the same manner." Here, in contrast, Plaintiffs provide extensive, unrebutted testimony of PAREXEL's corporate policies and procedures corroborating the identical job duties and compensation plan of CRAs and CMAs nationwide. *See Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 184-186 (D. Conn. 2010) (distinguishing *Trinh*).[10]

### III. DEFENDANTS' MOTION TO STRIKE PLAINTIFFS EXPERT WITNESS TESTIMONY APPLIES THE WRONG EVIDENTIARY STANDARD AND SHOULD BE DENIED

While Plaintiff's experts, Malcolm S. Cohen, Ph.D. (ECF 83-5) and David Gortler, Pharm.D., FCCP, (ECF 83-6), are unquestionably qualified, the legal standard for admissibility of their opinions stated by Defendants is incorrect. Since their opinions are being offered in support of a motion for class certification, PAREXEL's reliance on *Daubert* is misplaced. "[A]t the class certification stage, district courts are not required to

---

[10] Lastly, Defendants argue that the "Highly Compensated Employee" (HCE) exemption applies to some FLSA Class members and its application "raises more individualized inquiries," without articulating how determining whether a class members' annual compensation equals or exceeds $100,000 would raise individual issues. Moreover, in its discovery responses, PAREXEL did not identify any individual basis or any person subject to this alleged affirmative HCE exemption defense. (Keegan Reply Dec., ¶¶19-22 and Ex. B; and ECF 96-2, Ex. B, ROG No. 13, at pp. 48-52 of 116). Further, PAREXEL cites no case that has denied conditional certification on the grounds that HCE exemption may apply to some class members.

conduct a full *Daubert* analysis." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D.Cal.2012) (analyzing Ninth Circuit case law regarding evidentiary standards for class certification post-*Dukes*); and *Spann v. J.C.Penny Corp.*, 307 F.R.D. 508, 516 (C.D.Cal. May 18, 2015) (same). Rather, "the court should ask only if expert evidence is useful in evaluating whether class certification requirements have been met." *Id.*; and *Rai v. Santa Clara Valley Transportation Authority*, 308 F.R.D. 245, 267 (C.D.Cal. 2015) (same). Thus, the expert's opinions are admissible because they are relevant to "whether there was a common pattern and practice that could affect the class as a whole." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir.2011).[11]

Dr. Cohen's declaration was submitted in support of Plaintiffs' argument for the purpose of establishing a methodology exists to prove damages on a class-wide basis. Plaintiffs are not required to submit a completed damage analysis at the certification stage. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013); and *Hatamian v. Advanced Micro Dev., Inc.*, 2016 WL 1042502 *8 (N.D.Cal., Mar. 16, 2016) (rejecting defendant's argument that plaintiffs were required to prove a class-wide damage methodology to demonstrate predominance). The methodology proposed must only show that it is possible to determine damages on a class-wide basis based on Plaintiffs' theory of liability, not a full and complete damage analysis. *Leyva*, 716 F.3d at 514. In *Leyva*, the Ninth Circuit reversed denial of certification where a district court had incorrectly held that "the damages inquiry will be highly individualized," holding "[b]ut damages determinations are individual in nearly all wage-and-hour class actions." *Id.*, at 513-514. Here, like in *Leyva*, and "unlike in *Comcast*, if putative class members prove [PAREXEL's] liability, damages will be calculated based on the wages each employee lost due to

---

[11] *See Cholakyan v. Mercedes–Benz, USA, LLC*, 281 F.R.D. 534, 543 (C.D.Cal.2012) ("On a motion for class certification, it is not necessary that expert testimony resolve factual disputes going to the merits of plaintiff's claims; instead, the testimony must be relevant in assessing 'whether there was a common pattern and practice that could affect the class as a whole.' ") (quoting *Ellis*, 657 F.3d at 983).

[PAREXEL's] unlawful practices" and "documents show that [PAREXEL's] computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim." *Id*. at 514. Defendants cite no case excluding an expert using a calculation of damages and penalties by the methodology that Dr. Cohen proposes.[12] Therefore, Dr. Cohen's testimony can be of assistance to the Court in analyzing predominance of common questions, manageability and superiority.

Dr. Gortler's declaration was submitted in support of Plaintiffs' argument that there are common questions of fact among the putative class members. Specifically, Dr. Gortler analyzed PAREXEL's hundreds of pages of job descriptions and duties (ECF 96-48 to 96-53) and the thousands of pages of highly standardized corporate policies and procedures (e.g., SOPs [ECF 96-3 to 96-16]), and provides an opinion that demonstrates that Plaintiffs' theory of the case, i.e. CRAs and CMAs were mis-classified, can be proven by analysis of evidence common to all class members (which do not create individualized issues of proof). Therefore, Dr. Gortler's testimony can be of assistance to the Court in analyzing predominance of common questions and typicality requirements of class certification.

## IV. DEFENDANT'S PREVIOUSLY UNIDENTIFIED DECLARANTS SHOULD BE EXCLUDED PURSUANT TO RULE 37(C)(1)

In addition to Plaintiffs, PAREXEL identified ***only*** the following ***five persons*** likely to have discoverable information in its Initial Disclosures, (ECF No. 96-42), all of whom Plaintiffs deposed. (ECF 96-24, 96-25, 96-26, and 96-27). Thereafter, as a result of a discovery hearing (ECF 40 and 44) and after a *Belaire-West* privacy notice process (ECF 57), Plaintiff received a list of 215 persons who PAREXEL identified as members of the

---

[12] Further, the only evidentiary gap in the time record evidence in this case was created by PAREXEL's timekeeping system that did not record (or even allow for the recording) of *any* meal or rest periods. (E.g., ECF 92:Ex. 46 [PAR000216-217]; and ECF 96-27:Ex. AA: 178:9-24). When there is an evidentiary gap created by an employer's failure to keep adequate records, representative testimony can be used and presented through expert testimony to fill in the gap. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047, 194 L. Ed. 2d 124 (2016). Use of representative evidence for missed meal and rest period proposed by Dr. Cohen will accomplish this task and is permissible. *Id*.

California Sub-Class on March 9, 2018, merely thirty days before Plaintiffs filed their instant motion on April 9, 2018.

Given the gravity of Plaintiffs' overwhelming evidence supporting certification, PAREXEL now attempts to defeat Plaintiffs' motion by filing declarations from witnesses not previously disclosed in any of PAREXEL's Rule 26(a)(1) disclosures. A party who fails to make the required initial disclosure "is not allowed to use that information or witness to supply evidence on a motion," unless the Court finds that the failure to comply with disclosure requirements was "substantially justified" or "harmless." Fed.R.Civ.P. 37(c)(1); see also, *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 604 (S.D. Cal. 2015) (excluding evidence not disclosed prior to filing of certification motion).

Here, PAREXEL's has filed twenty-one (21) declarations of non-California current employees who were allegedly employed as either a CRA or a CMA who were not previously disclosed in any of PAREXEL's Rule 26(a)(1) disclosures, who were not on the California Sub-Class list (and thus were previously concealed from Plaintiffs), eighteen of which were not produced before they were filed with PAREXEL's original opposition on May 21, 2018 (ECF 101)[13]; and three of which were produced after Plaintiffs filed the instant motion on April 30, 2018.[14] Additionally, PAREXEL's filed four declarations of non-California current employees who were not previously disclosed until April 3, 2018, just six (6) days before Plaintiffs' filing deadline on April 9, 2018, who were not on the

---

[13] James F. Maddock III (ECF No. 115-26), Anne Wright (ECF No. 115-27), Evelyn Bamgbose (ECF No. 115-46), Pamela Bazemore (ECF No. 115-47), Melissa Bornemann (ECF No. 115-49), Dustin Cantrell (ECF No. 115-50), Lily Chan (ECF No. 115-51), Kaitlin Daly (ECF No. 115-54), Daniel DiJohnson (ECF No. 115-56), Andrew Endicott (ECF No. 115-57), Natalia Gruzdeva (ECF No. 115-59), David Howell (ECF No. 115-60), Gloria Jusino (ECF No. 115-61), Elizabeth Madden (ECF No. 115-63), Terese Mittense (ECF No. 115-64), Rebecca Moser (ECF No. 115-66), Lanesha Sanders (ECF No. 115-70), and Hannah Weaver (ECF No. 115-72).

[14] Richard Dellapuca (ECF No. 115-55), Jason Zatkovich (ECF No. 115-73), and Samir Zughni (ECF No. 115-74).

1  California Sub-Class list, and whose declarations were not produced until <u>after April 9, 2018</u>.[15]  Lastly, PAREXEL filed seven (7) current employees declarations, that were not produced until <u>after April 9, 2018</u>, 6 of whom were not on the California Sub-Class list.[16]  Defendants' active concealment of their current, non-California employees declarations until <u>after April 9, 2018 when Plaintiffs had filed their certification motion</u> and objections to the production of their employment records (Keegan Reply Decl., ¶¶4-22 and Ex. BB-HH) was intended to preclude Plaintiffs from deposing and cross-examining the declarants on their declaration testimony. Thus, Plaintiffs' contends that all the thirty-two declarations should be stricken.[17]

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion and (1) conditionally certify the FLSA Class; (2) certify the California Sub-Class; and (3) appoint the named Plaintiffs as Class Representatives and their attorneys as Class Counsel.

Dated: July 20, 2018

KEEGAN & BAKER, LLP
s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
Attorneys for Plaintiffs Schoulee Cones and Dexter Pasis

---

[15] Mason Gay (ECF No. 115-58), Jackie Nichols (ECF No. 115-67), Cheryl Cox (ECF No. 115-53), and Chandra Lee (ECF No. 115-62).

[16] Kim Anglin (ECF No. 115-44), Kathrine Benton (ECF No. 115-48), Marnina Appiah (ECF No. 115-45), Sarah Monteith (ECF No. 115-65), Brandi Copling (ECF No. 115-52), Jennifer Pathak (ECF No. 115-68), and Laurie Richard (ECF No. 115-69).

[17] The declaration of James F. Maddock III (ECF 115-26), who was never previously identified in any of PAREXEL's Rule 26(a)(1) disclosures, should also be stricken. At a discovery hearing, Defendants had agreed to produce a supplemental interrogatory response identifying the number of persons Defendants intend to assert their HCE exemption defense FLSA class period. (Keegan Reply Dec., ¶¶19-22 and Ex. BB: 01-05-2018 Hearing Transcript, at 37:1-6).  However, Defendants never complied and failed to produce a supplemental interrogatory response with the information. Instead, Defendants' produced Mr. Maddock's declaration with their opposition, who now purports to produce such information.